504 A.2d 433

James Leed, Petitioner *v.* Workmen's Compensation Appeal Board (Quaker Alloy Casting Co.), Respondents.

Submitted on briefs December 10, 1985, to Judges Rogers and MacPhail, and Senior Judge Barbieri, sitting as a panel of three.

*Marc S. Jacobs, Galfand, Berger, Senesky, Lurie & March,* for petitioner.

*Robert P. Reed, Metzger, Wickersham, Knauss & Erb,* for respondent, Quaker Alloy Casting Co.

OPINION BY JUDGE ROGERS, February 11, 1986:

James Leed (claimant) has filed a petition for review of an order of the Workmen's Compensation Appeal Board (board) affirming a referee's decision denying him benefits for his alleged total disability on the ground that he failed to meet his burden to prove that the incidence of the condition of which he complained—aggravation of his disabling lung condition—was greater in the casting or foundry industry than in the general population, as required by Section 108(n) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §27.1(n).

The claimant was employed by the Quaker Alloy Casting Company (employer) for twenty years. During the claimant's first year of work, he worked in a sand mill, mixing sand and other ingredients, and for the next nineteen years he worked as a core paster. The claimant's occupation as a core paster required

him to place previously baked cores of sand on a table and paste them together using zirconate. While the claimant worked as a sand mill operator and as a core paster, he was exposed to smoky and dusty conditions.

In 1976, the claimant filed a petition claiming a disability caused by an "occupational disease" as defined in Section 108(n) of the Act, *as amended,* 77 P.S. §27.1(n), alleging that he became totally disabled on June 4, 1976, from "lung disease due to work environment." After hearings, the referee found that since June 4, 1976, the claimant was totally disabled from chronic obstructive lung disease, bullous emphysema, and chronic bronchitis, and that "the claimant's disabling lung conditions, and in particular the disabling conditions of chronic obstructive lung disease and chronic bronchitis, were aggravated by claimant's work environment . . . in the breathing of smoke and fumes. . . ." The referee dismissed the claim petition because the "claimant failed to establish that the incidence of chronic obstructive lung disease, bullous emphysema, chronic bronchitis, emphysema, and restrictive lung disease is substantially greater in the casting or foundry industry or in the occupation of core paster than in the general population."

The claimant filed an appeal with the board, which remanded the matter to the referee to consider whether in the light of *Plasteel Products Corporation v. Workmen's Compensation Appeal Board,* 32 Pa. Commonwealth Ct. 405, 379 A.2d 908 (1977), the incidence "of what [the claimant] was exposed to in his work environment and which the referee had found aggravated his diseased condition," is substantially greater in the claimant's industry and occupation than in the general population.[1]

---

[1] As can be seen, the board's instructions to the referee do not comport with the requirement of Section 108(n) that the incidence of the disease, not the conditions alleged to have caused it, is greater in the industry or occupation than in the general public.

Following remand of the claim petition, the referee received additional evidence and issued a decision, dated August 9, 1982, in which he pertinently found as follows:

19. [T]he claimant has been totally disabled since June 4, 1976 due to chronic obstructive lung disease, chronic bronchitis, bullous emphysema, and also, but less significantly, restrictive lung disease and emphysema, all of said conditions being caused by recurrent infections associated with several episodes of pneumonia and continual bacterial and/or viral infections, and contributed to and aggravated by claimant's work environment at defendant's place of business after June 30, 1973 in the breathing of dust, smoke and fumes.

The referee made the following pertinent conclusions of law:

2. While claimant established that he has minimal silicosis, he failed to prove by sufficient competent evidence that he contracted a compensable disabling occupational disease of silicosis due to exposure to the hazard of occupational disease after June 30, 1973, within the meaning of §108(k) and §301(c)(2) of the Act.

. . . .

5. Claimant proved by sufficient competent evidence that the chronic obstructive lung disease, bullous emphysema, chronic bronchitis, emphysema and restrictive lung disease were contributed to and aggravated by his occupation as a core paster in the foundry industry, and that he was exposed to said contribution and aggravation by reason of his employment for defendant after June 30, 1973, but claimant failed

to prove by sufficient competent evidence that the incidence of said diseases is substantially greater in the casting a [sic] foundry industry or the occupation of core paster than in the general population, within the meaning of §108(n) of the Act. . . .

6. [The c]laimant failed to prove by sufficient competent evidence that such aggravated diseases [as obstructive lung disease, bullous emphysema, chronic bronchitis, restrictive lung disease, and emphysema] were substantially more prevalent in his occupation than in the general population within the meaning of §108 (n), §301(c)(1), and §301(c)(2) of the Act.

On appeal, the board stated that in order to be awarded compensation under Section 108(n), a claimant must show that he was exposed to a disease by reason of his employment, that the disease was causally related to the industry or occupation, and that the incidence of the disease is substantially greater in that industry than in the general population. Citing *Plasteel,* the board concluded that the claimant failed to prove all of the elements in accordance with Section 108(n) of the Act, and affirmed the referee's order.

The claimant principally argues on appeal that the referee's findings that his exposure to dust, smoke, and fumes aggravated his preexisting conditions of lung disease, emphysema and bronchitis entitle him to compensation for an injury as defined in Section 301 (c)(1) of the Act, *as amended,* 77 P.S. §411(1), which pertinently provides as follows:

(1) The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such

disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury.

Section 301(c)(2) of the Act, which as we have noted the claimant first advanced as his ground for relief, reads:

(2) The terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act.

Section 108 of the Act, *as amended*, 77 P.S. §27.1, names specific occupational diseases as compensable and then embraces by Section 108(n), *as amended*, 77 P.S. §27.1(n):

All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population.

In *Plasteel*, we held that a worker already suffering from a condition occasioned by exposure to coal dust and whose diseased condition was aggravated by an occupational disease type of harm was entitled to compensation under Section 301(c)(2) although the harm did not rise to the level of an independent disease provided that he prove that his aggravated diseases were caused by the new employment and are substantially greater in the new occupation than in the general population. We emphasized in *Plasteel* that the term injury as used in Section 301(c)(2) was intended to include an occupational related harm which does not amount to a separate occupational disease; in

that case an aggravation of an existing diseased condition.

Stanton v. Ben Rubin Ajax Cleaners-Dyers, 74 Pa. Commonwealth Ct. 628, 460 A.2d 1219 (1983), presented the case of a worker complaining of the aggravation of an existing lung condition who claimed compensation under The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, as amended, 77 P.S. §§1201-1603. We held that a work-related aggravation of preexisting occupational diseases is not compensable under the Occupational Disease Act but that the aggravation of a preexisting occupational disease is compensable under Section 301(c) of the Workmen's Compensation Act, citing Plasteel, which as we have noted so held in a case in which Section 301 (c)(2) was invoked and applied.

In Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Co.), 81 Pa. Commonwealth Ct. 270, 473 A.2d 260 (1984), the claimant who complained of the aggravation of a preexisting asthmatic, and not work-related, condition, first invoked Section 301(c)(2) of the Workmen's Compensation Act but amended his claim to invoke Section 301(c)(1). We held that the aggravation of a preexisting disease was an injury as defined by Section 301(c)(1) and that it was not necessary that the claimant prove that the incidence of condition complained of was greater in his occupation than in the general population. 81 Pa. Commonwealth Ct. at 272, 473 A.2d at 261.[2] We followed

---

[2] We observed in Arlington Auto Body Service v. Workmen's Compensation Appeal Board (Bosack), 89 Pa. Commonwealth Ct. 328, 332 n.6, 492 A.2d 496, 498 n.6 (1985), that:

In Pawlowsky, Judge WILLIAMS, while not specifically discussing the differences between Section 301(c)(1) and Section 301(c)(2), described an injury under the former section as one coming 'under the general compensation provisions of the Act.' 81 Pa. Commonwealth Ct. at 272, 473 A.2d at 261.

*Pawlosky* in *Sandusky v. Workmen's Compensation Appeal Board,* 87 Pa. Commonwealth Ct. 605, 487 A.2d 1019 (1985).

The referee in this case found that the "[c]laimant proved by sufficient competent evidence that the chronic obstructive lung disease, bullous emphysema, chronic bronchitis, emphysema and restrictive lung diseases were contributed to and aggravated by his occupation as a core paster in the foundry industry, and that he was exposed to said contribution and aggravation by reason of his employment for defendant. . . ." The necessary conclusion is that the claimant would be entitled to an award under the holding of *Pawlosky* and *Sandusky* without proof of greater incidence if he had alleged an injury under Section 301 (c)(1). However, he alleged that he contracted an occupational disease as defined in Section 108(n), thus invoking Section 301(c)(2).

*Pawlosky* was not decided until after the claimant in this case filed his brief with the board; it was however, decided before the board issued its decision in this case denying benefits by reason of the failure to meet the requirements of Section 108(n). The claimant, of course, urges the rule of *Pawlosky* upon us.

The board's regulation at 34 Pa. Code §111.44(c) provides that although a claimant's pleading is inappropriate and unamended, the referee or the board may grant him the relief to which he is entitled under all the evidence.

We believe that the proper course in these circumstances of a claimant who has pleaded a case under Section 301(c)(2) and not proved it, but who has proved a case under Section 301(c)(1) and not pleaded it, is to vacate the order denying him compensation and to remand the record to the board for consideration of the case under Section 301(c)(1) and such relief as it deems appropriate. We will so order. Jurisdiction relinquished.

## ORDER

AND NOW, this 11th day of February, 1986, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is vacated; the record is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.