529 A.2d 1166

Pittsburgh Board of Education, Petitioner *v.* Workmen's Compensation Appeal Board (Perkins), Respondents.

Argued May 22, 1987, before Judges Craig and Barry, and Senior Judge Narick, sitting as a panel of three.

*David H. Dille,* Assistant Solicitor, with him, *Robert J. Stefanko,* Solicitor, for petitioner.

*Joel Persky, Henderson & Goldberg, P.C.,* for respondent, Daniel R. Perkins.

OPINION BY SENIOR JUDGE NARICK, August 12, 1987:

The Pittsburgh Board of Education (Petitioner) has appealed an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's award of benefits to Daniel R. Perkins (Claimant). We affirm.

The referee had awarded benefits to Claimant for a totally disabling occupational disease under Section 108(n) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1 of the Act of October 17, 1972, P.L. 930, 77 P.S. §27.1(n), and the Board affirmed on the same grounds. Petitioner contends that benefits should have been denied because Claimant failed to establish the necessary causal connection between the workplace and the injury through unequivocal medical testimony, and that Claimant failed to prove that the incidence of his disease was substantially greater in his occupation than in the general population. Alternatively, Petitioner argues that Claimant has also failed to establish an injury under Section 301(c)(1) of the Act, 77 P.S. §411(1), because he did not prove that he sustained an aggravation of a pre-existing disease. Finally, Petitioner alleges a violation of its constitutional rights due to the referee's consideration of a letter sent to him by Claimant's counsel after the proceedings were closed.

Claimant was employed by Petitioner as a cleaner. On August 11, 1982, while cleaning a swimming pool with other employees, Claimant was exposed to chlorine fumes when a co-worker unknowingly put two handfuls of powdered chlorine in a bucket containing

muriatic acid. Claimant breathed the fumes that were emitted and experienced coughing and gagging that day. The next day, he was admitted to the hospital when he began experiencing chest pains. He was hospitalized for a week, and never returned to work. Claimant's physician, Dr. Claypool, diagnosed Claimant's resulting disability as bronchiolitis obliterans with obliteration of distal air units or severe alveolar-capillary injury. He testified, as did Claimant, that Claimant continues to suffer from a shortness of breath, and is unable to resume his duties. The referee accepted as credible both Claimant's and his physician's testimony.

In accordance with our scope of review, we must decide whether necessary factual findings are supported by substantial, competent evidence, whether an error of law has been made, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

Petitioner's first argument is that Claimant failed to meet his burden in establishing a Section 108(n) occupational disease. We note initially that Section 108(n) of the Act sets forth three requirements in order to have a disease which is not specifically named as an occupational disease classified as such: "All other diseases (1) to which the Claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. . . ."

Petitioner asserts that Claimant's evidence did not establish the second requirement of a causal connection between the injury and the workplace.[1] The referee

---

[1] Where such a causal link is not obvious, it must be established by unequivocal medical testimony. *Lewis v. Commonwealth of Pennsylvania*, 508 Pa. 360, 498 A.2d 800 (1985).

found otherwise and we must concur as his determination was based on the competent testimony of Dr. Claypool. We are convinced that Dr. Claypool's testimony,[2] read in its entirety, supports the finding that Claimant was exposed to chlorine fumes in the course of his employment and that such exposure led to his resultant disability.

Petitioner further contends that the third requirement of Section 108(n) was not met. Dr. Claypool's only response relating to this issue, when asked whether the incidence of this disease was greater in Claimant's occu-

---

[2] That testimony included the following:

(On direct examination)

Q  Doctor, based on the history provided to you by Mr. Perkins, various laboratory data and physical examination performed by you and evaluated by you, did you form any impressions with regard to a diagnosis for Mr. Perkins' complaints of shortness of breath?

A  After reviewing the literature on chlorine inhalation and in discussing Mr. Perkins' history, which was in that Mr. Perkins was totally asymptomatic from a respiratory standpoint before August of 1982 and had significant complaints after the inhalation, coupled with that history and with his pulmonary function studies and with the review of the literature on chlorine inhalation, I feel that the overwhelming likelihood was that Mr. Perkins' problems related from that inhalation episode.

On cross-examination, Petitioner's counsel attempted to elicit an admission that Claimant's condition could be due to other causes. Dr. Claypool stated that it would be "very unlikely" that Claimant's condition were caused by exposure to acid at his previous job, and that the "kind of pulmonary dysfunction that Mr. Perkins has is really very different from what one gets as a cigarette smoker." Although the doctor admitted that sarcoidosis and idiopathic pulmonary fibrosis could be possible causes, he qualified that by stating that he would expect to see "affected chest x-rays" if those conditions were present, "and this is quite different." He similarly denied that heart disease would cause Claimant's condition.

pation than in the general population, was "I think yes, if what Mr. Perkins' job description says is true." This equivocal answer is the only testimony of record which could support the referee's finding on this point. The remainder of Dr. Claypool's testimony seems to support a different result, in that he testified as to the rarity of cases of chlorine inhalation, and never mentioned the involvement of a particular work environment. Accordingly, because the Section 108(n) requirements are cumulative, we agree with Petitioner that Claimant did not sustain his burden of proving that his disability resulted from a Section 108(n) occupational disease.

However, we are not of the opinion that this failure precludes Claimant from receiving workmen's compensation benefits for his disability which, as discussed above, was clearly work-related. Section 301(c)(1) of the Act defines "injury" as follows:

> The term[] 'injury' . . . as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury. . . .

We have previously held that an employment-related disease, which is not an occupational disease under Section 108(n), may nonetheless constitute a compensable "injury" under Section 301(c). *Hayden v. Workmen's Compensation Appeal Board,* 83 Pa. Commonwealth Ct. 451, 479 A.2d 631 (1984); *see also Pawlosky v. Workmen's Compensation Appeal Board,* 81 Pa. Commonwealth Ct. 270, 473 A.2d 260 (1984);[3] *Sandusky v. Workmen's Compensation Appeal Board,* 87 Pa. Commonwealth Ct. 605, 487 A.2d 1019 (1985).

---

[3] *Aff'd,* Pa. , 525 A.2d 1204 (No. 88 W.D. Appeal Docket 1984, filed May 29, 1987).

A review of the record indicates that the parties were unsure of which section of the Act should govern these proceedings. Claimant's original claim petition did not allege a Section 108(n) occupational disease, but rather, an injury which occurred on August 12, 1982 (the correct date is August 11, 1982) due to exposure to chlorine fumes. At some point,[4] this claim petition became denominated a "WCOD [Workmen's Compensation Occupational Disease] Petition". The parties apparently tried the case as an occupational disease claim, although various pleadings contained in the record indicate that Petitioner objected to this because Claimant did not fill in the portion of the original claim form which requests additional information from a claimant who is alleging a Section 108(n) occupational disease. The referee found that "[t]he Claimant has sustained his burden of proving that he sustained a 108(n) disease *or in the alternative, compensable injury,* on August 11, 1982 . . ." (Emphasis added.) (Conclusion of Law Number 1.) We agree with the conclusion that Claimant suffered a compensable injury.

Petitioner attempts to distinguish *Pawlosky* and *Hayden* on the grounds that both involved an aggravation of a pre-existing injury due to a long-term exposure to hazardous substances. While that is certainly true, we do not believe that either the fact that there was a pre-existing injury, or that the exposure was lengthy was the dispositive factor in either case. Rather, this Court found that the claimants in both *Pawlosky* and *Hayden* had sustained an "injury" as that term is defined in Section 301(c), which includes an aggravation of a pre-existing injury. However, that definition is certain-

---

[4] On the Department of Labor and Industry form assigning this case to a referee, dated 12-9-82, the typewritten notation "CLAIM" was crossed out and replaced by the handwritten notation "WCOD."

ly not limited to aggravations, and expressly includes "an injury . . . arising in the course of . . . employment . . . and such disease . . . as naturally results from the injury . . ." Section 301(c). The referee found that Claimant sustained an injury, the inhalation of chlorine fumes, in the course of his employment, and that such injury was causally related to his subsequent disability. We have determined that those findings are based upon substantial evidence. Thus, we are convinced that Claimant proved the existence of a compensable injury under Section 301(c).[5]

Petitioner argues that we must remand to the referee for additional findings if we reach such a result. This reasoning is based upon this court's holding in *Leed v. Workmen's Compensation Appeal Board*, 95 Pa. Commonwealth Ct. 124, 504 A.2d 433 (1986). Therein we determined that the proper course of action where the Claimant had pleaded a case under Section 301(c)(2) of the Act but had not proved it, while proving a case under Section 301(c)(1), which he had not pleaded, was to remand to the Board for consideration of the relief to be granted. In the instant matter, however, the referee saw fit to render an alternative conclusion with respect to the grounds for relief. His findings of fact[6] are suffi-

---

[5] In addition, we note that " '[i]t has long been the rule in workmen's compensation cases that the form of the petition filed is not controlling where the facts warrant relief, and that if a claimant is entitled to relief under any section of the Act, his petition will be considered as filed under that section.' " *Long v. Workmen's Compensation Appeal Board*, 95 Pa. Commonwealth Ct. 242, 505 A.2d 369, 373 (1986), *citing Pittsburgh Press Co. v. Workmen's Compensation Appeal Board*, 82 Pa. Commonwealth Ct. 538, 540, 475 A.2d 972, 973 (1984).

[6] In pertinent part, the referee found:

4. It was the claimant's testimony that the incident occurred while he was in a small room using muriatic acid, which he subsequently found had chlorine in it. Though

ciently detailed to allow us to conclude that Claimant has established a compensable injury under Section 301(c). A remand in this instance is, therefore, unnecessary.[7]

---

he was not aware of it at that time, he subsequently found that as a result chlorine fumes were given off and inhaled by him. The claimant further testified that he gagged and vomited and by the next day had such severe chest pains that he was admitted to Columbia Hospital where he stayed for one week. Sometime subsequent thereto, but prior to September 30, 1982, the claimant while speaking with his foreman found that he had been exposed to chlorine fumes.

\* \* \*

6. The hospital records from Columbia Health Center are consistent with the testimony of the claimant in that they show an admission of August 12, 1982 with a history that the claimant was in good health up until the day prior to admission when he started experiencing sharp substernal chest pain.

\* \* \*

7. William D. Claypool, M.D. testified on behalf of the claimant. Dr. Claypool is board certified in both internal medicine and its subspecialty, pulmonary medicine. It was Dr. Claypool's testimony that as a result of exposure to chlorine gas while in the course and scope of his employment, the claimant sustained severe bronchiolitis obliterans with obliteration of distal air units or, severe alveolar-capillary injury which was causally related to his employment and would have a substantially greater incidence in individuals employed such as Mr. Perkins than in the general population, thereby satisfying the requirements of 108(n) disease. It was further Dr. Claypool's testimony that the claimant has been disabled as a result thereof since August 12, 1982 with a poor prognosis for returning to work as a cleaner.

\* \* \*

9. Your Referee chooses to believe the testimony of the claimant and finds that he sustained on August 11, 1982 an exposure to chlorine fumes and further chooses to believe the testimony of William Claypool, M.D. over that of C.

Petitioner's final argument is that its constitutional rights were violated because the referee considered a letter forwarded to him by Claimant's counsel after the proceedings were closed. The letter was from Claimant's treating physician, Dr. Baratta, to Petitioner's employee, Dr. Flannigan [sic], concerning Claimant's case. Petitioner contends that the referee relied upon the letter, because it is mentioned in Finding of Fact Number 5. The basis of Petitioner's objection is that the contents of the letter relate to the causation issue, and it was therefore improper for the referee to consider it over objection. However, it is obvious that the referee only relied upon the letter for purposes of establishing statutory notice to Petitioner of Claimant's disability. (Finding of Fact Number 5, Conclusion of Law Number 2). Yet Petitioner never contested the fact that it had notice as of October 5, 1982, the same date noted by the referee. (This date is specifically admitted in Petitioner's answer to the claim petition). Any claimed error is, therefore, harmless.

Accordingly, we affirm the order of the Board awarding benefits to the Claimant.

ORDER

AND NOW, this 12th day of August, 1987, the order of the Workmen's Compensation Appeal Board in the above-referenced matter, dated February 21, 1986, is affirmed.

---

Ludwig Anderson, M.D. and finds that as a result of the August 11, 1982 exposure to chlorine, the claimant sustained a pulmonary disability beginning August 12, 1982 and continuing to the present and into the indefinite future for which he is entitled to workmen's compensation benefits in accordance with Section 108(n) of the Workmen's Compensation Act.

[7] In *Pawlosky,* we remanded under similar circumstances solely for the entry of an award of benefits. That action was necessary because both the referee and Board had denied benefits, which is not the case here.