617 A.2d 846

**BROWNING–FERRIS INDUSTRIES OF PENNSYLVANIA, INC., Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (JONES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 21, 1992.

Decided Nov. 18, 1992.

530

John F. Hooper, for petitioner.

Francis J. Scott, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, PELLEGRINI AND FRIEDMAN, JJ.

McGINLEY, Judge.

Browning–Ferris Industries of Pennsylvania, Inc. (Employer) petitions for review of an order of the Workmen's Compen-

sation Appeal Board (Board) that affirmed a referee's decision granting the lifetime claim petition of Richard A. Jones (Decedent) and the fatal claim petition of his widow, Leona B. Jones (Claimant). We affirm.

Decedent had been employed as a refuse collector for Employer for twenty-two years. Although Decedent primarily worked with containers, he was originally required to handle garbage, including waste from hospitals. Almost a week before Decedent's last day of work on March 26, 1985, he complained to his wife that he did not feel well. On March 26, 1985, Decedent, an insulin-dependent diabetic, visited his treating physician, George Cheponis, M.D. (Dr. Cheponis), a specialist in internal medicine. Dr. Cheponis ordered a series of blood tests, which led to a diagnosis that Decedent had contracted hepatitis B. Decedent's condition continued to deteriorate, and Dr. Cheponis admitted him to Sewickley Valley Hospital on April 5, 1985. Because of decreased liver function and resulting complications, on April 11, 1985, he was transferred to Presbyterian University Hospital under the care of Tobey Orem Graham, M.D. (Dr. Graham), a board-certified gastroenterologist. Decedent made gradual improvement and at one point was no longer considered a liver transplant candidate. However, on May 2, 1985, Decedent suffered a cardiac arrest and died. His death certificate listed the cause of death as cardiac arrest, sepsis, fulminant hepatic failure and diabetic mellitus.

On November 12, 1985, Claimant filed a lifetime claim petition and a fatal claim petition alleging that Decedent sustained an injury or disease by coming into contact with the hepatitis B virus through a cut or needle stick during the course of his employment and that the fulminant hepatitis B infection had resulted in death on May 2, 1985.

At the hearing before the referee, Claimant testified regarding Decedent's employment and job duties. Claimant also presented the testimony of Fred Thomas, Decedent's supervisor, who worked all the routes that were assigned to Decedent. Also, Claimant introduced the deposition testimony of Dr. Cheponis and Dr. Graham. Dr. Cheponis opined that,

within a reasonable degree of medical certainty, the most likely cause of Decedent's hepatitis B was his employment and duties associated therewith. Dr. Graham testified that she has investigated over 200 hepatitis cases in her career and that, given Decedent's job description, he most likely contracted the hepatitis through an injury in the course of his employment. Dr. Graham opined that the hepatitis B infection was a substantial contributing factor in Decedent's death.

In opposition to Claimant's petitions, Employer presented the deposition testimony of Eugene Winkelman, M.D. (Dr. Winkelman), a physician board-certified in gastroenterology and Cyril H. Wecht, M.D. (Dr. Wecht), a physician board-certified in pathology. Dr. Winkelman reviewed Decedent's medical records and expressed doubt that the hepatitis B infection was the immediate cause of Decedent's death or that Decedent contracted hepatitis in the course of his occupation. Dr. Wecht reviewed Decedent's medical records and concluded that Decedent did not contract the hepatitis B infection during the course of his employment.

In this difficult case, the referee accepted Claimant's medical evidence over the medical evidence presented by Employer and found that Decedent did incur hepatitis B in the workplace and that hepatitis B was a substantial contributing factor in Decedent's death. As a result, the referee granted Decedent's lifetime claim petition, awarding his estate $279.15 in weekly benefits from March 26, 1985, until May 2, 1985. The referee also granted Claimant's fatal claim petition awarding $213.57 in weekly benefits beginning May 3, 1985. The Board affirmed and Employer appeals.

Employer contends that there is insufficient evidence in the record for the referee to conclude that Decedent suffered an injury in the course of his employment within the meaning of Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act (Act),[1] and likewise that there is insufficient evidence for the referee to conclude that Decedent was exposed to hepatitis in the course of his employment or that the incidence of hepatitis is substantially greater in the refuse industry than

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

in the general population. Employer also contends that the referee erred in finding that refuse workers are auxiliary hospital workers, thereby bringing Decedent's injury under the occupational disease provisions found in Section 108(m) of the Act.[2] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagon of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

■ Employer attacks the opinions of Dr. Cheponis and Dr. Graham, that Decedent contracted the hepatitis from either a cut or needle stick in the course of his employment, on the basis that they both lacked first-hand information from others concerning any specific cut or scrape sustained by Decedent. Employer also contends that Dr. Cheponis and Dr. Graham failed to exclude other high-risk sources of transmission including re-use of intravenous needles and homosexual or extramarital affairs.

In *Jackson Township Volunteer Fire Company v. Workmen's Compensation Appeal Board (Wallet)*, 140 Pa.Commonwealth Ct. 620, 594 A.2d 826 (1991), we held that because one incident of exposure to the hepatitis B virus is sufficient to cause an infection, such an exposure constitutes an "injury" under Section 301(c)(1) of the Act, 77 P.S. § 411(1), and thus a claimant need not meet the statutory requirements for establishing an occupational disease under Section 108(n) of the Act, 77 P.S. § 27.1(n).

In *Jackson*, this Court, in an en banc decision, stated:
[W]e hold that persons exposed to a serious risk of contracting a disease commonly known to be highly contagious/infectious and potentially deadly, have been 'injured' for the purpose of receiving compensation under the Act.

. . . .

2. 77 P.S. § 27.1(m).

We know of no cases in which a single incidence of exposure to coal dust has resulted in pneumoconiosis or death. The same cannot be said for AIDS and hepatitis, diseases so contagious and deadly that a person may contract them after being exposed only once.

*Id.* at 625, 594 A.2d at 829.

In the present case, the referee made the following pertinent findings:

7. The widow of Richard Jones testified that her husband has been employed as a refuse collector, truck driver for 22 years, first with Marathon Services and then with Browning–Ferris, who has taken over Marathon. When her husband returned from a day's work he was dirty and smelled. At times, he, perhaps a couple of times a month, would scrape his hand or receive a cut during his work. He wore work gloves that wore out quickly. At times he would scrape his leg or shin getting on or off the refuse truck. She washed his clothes and sometimes would notice rips in his clothing. Almost a week before her husband last worked on March 26, 1985, he had complained that he did not feel well. She was told by her husband that at times he picked up waste from hospitals.

. . . :

9. There are not other known personal activities that would place the decedent at a greater than normal risk of contracting Hepatitis B.

10. Fred Thomas testified for the Claimant. He has worked for the Defendant for 25 years as a supervisor and later as an inside overseer. Richard Jones was his first cousin who worked under him. He testified that he has personally worked all of the routes that were assinged [sic] to the Claimant. On occasion he would have handled garbage. He wore gloves, he did receive scratches and cuts on occasion.

11. From the testimony of Fred Thomas and Mrs. Jones, it is found that Claimant did receive cuts and bruises to his hands and legs on occasion and that Claimant did, although

primarily work with containers, have to handle other rubbish, i.e., plastic bags of rubbish on occasion.

12. It is found that Claimant did, in the weeks preceding his last work day have an occasion to pick up rubbish for hospitals and doctors' offices.

13. Toby Orem Graham, M.D. has given her deposition testimony for the Claimant on May 27, 1986. She is an associate professor of medicine in the division of gastroenterology at the University of Pittsburgh. She is board-certified in that speciality. Dr. Graham speculates that in her career since 1977, she has encountered in excess of 200 Hepatitis B cases and has seen 10 to 20 cases similar to the symptoms suffered by Richard Jones. This doctor first saw Claimant April of 1985. Dr. Graham gives a diagnosis of fulminant Hepatitis B which resulted in severe liver problems. Dr. Graham opined that as she has eliminated other possible sources of the infection, that the most likely source was that of Claimant's employment.

14. Dr. Graham testifies that AIDS is transmitted by an exchange of body fluids which can come about by piercing the skin with an object previously contaminated by someone who has or is a carrier of AIDS. Hepatitis B is transmitted in a similar manner. Dr. Graham concludes there is no exact study to show a higher incidence of hepatitis B in refuse collectors compared to the average population. She considers, however, that claimant probably did become infected from his employment. Dr. Graham further couldn't explain the exact cause of death. No autopsy was performed. Dr. Graham is aware of a study of New York Sanitation Workers that seemed to suggest that they have a higher incidence of AIDS than the general population.

15. Dr. Graham opined that if it has not been for the hepatitis B that claimant would not have died. She feels the hepatitis was a substantial contributing factor to cause claimant's death.

16. Dr. Graham gives unequivocal testimony that hepatitis B was a major contributing factor to cause claimant's death.

17. The claimant has taken the deposition testimony of George B. Cheponis, M.D. He is Board certified in internal medicine. Richard Jones had been a patient of his since May 9, 1977 until his demise in 1985. During that time he treated Richard Jones as an insulin-dependent diabetic. On March 26, 1985, he saw the deceased who said he just didn't feel well.

18. Dr. Cheponis testified that the deceased was asked if he had been exposed to hepatitis. He observed that he did pick up refuse from hospitals and doctor's offices. He related no specific incident. He was not a complainer.

19. Dr. Cheponis was well acquainted with Richard Jones both professionally and as a friend and considers claimant to be a solid family man with no indications that he was a homosexual, drug user or involved in any extramarital affairs.

20. Over the defense objection, which is overruled, Dr. Cheponis speculated that given a scenario of picking up possibly contaminated material from hospitals and doctor's offices that within a reasonable degree of medical certainty that he thinks the most likely cause of the hepatitis B was the deceased's employment.

Referee's Decision, March 22, 1989, at 2–4, Reproduced Record (R.R.) at 1051a–53a.

Employer contends that the referee's findings are not supported by substantial evidence on the grounds that there is no evidence indicating that Decedent was exposed to objects contaminated with the hepatitis virus and that Claimant's medical witnesses did not sufficiently eliminate all other sources of exposure. If there is sufficient relevant evidence in the record, when viewed as a whole, which a reasonable mind might accept as adequate to support the conclusion, the evidence is substantial and we must endorse the referee's findings. *Robinson v. Workmen's Compensation Appeal Board (Lindsey)*, 139 Pa.Commonwealth Ct. 82, 88, 589 A.2d 778, 780 (1991). In making this determination, we will not engage in reweighing the testimony of contradicting witnesses, or resolving the issue of which witnesses are more credible. Matters

of credibility are for the referee, whom we continue to regard as the ultimate fact finder. *Id.* In determining whether there is substantial evidence to support an agency's findings, we must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inference which can be drawn logically and reasonably from the evidence. *Bishop Leonard Regional Catholic School v. Unemployment Compensation Board of Review,* 140 Pa.Commonwealth Ct. 428, 436, 593 A.2d 28, 32, *petition for allowance of appeal denied* 529 Pa. 624, 600 A.2d 540 (1991), *cert. denied sub nom. Wesley v. Pennsylvania Unemployment Compensation Board of Review,* —— U.S. ——, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992).

Our review of the record as a whole indicates that the referee's findings are supported by substantial evidence. These findings indicate that Decedent received cuts and scrapes during the course of his employment wherein he picked up medical waste from hospitals and doctors' offices. Claimant testified regarding the frequent cuts and scrapes Decedent received at work. R.R. at 21a–22a, 44a. Frederick Thomas (Thomas), Decedent's supervisor, testified that Decedent picked-up medical waste, including dirty needles and bloody pads. R.R. at 90a–95a. Serum hepatitis (hepatitis B) is presumed, as noted in Section 108(m) of the Act, 77 P.S. § 27.1(m), to be an occupational disease in the occupations of blood processors, fractionators, nursing, or auxiliary services involving exposure to such diseases.

Also, both Dr. Cheponis and Dr. Graham ruled out other causes for the hepatitis infection.[3] Dr. Cheponis testified that he was well-acquainted with Decedent as a friend and considered him to be a friend and a "solid family man" with no indications of homosexual or extramarital affairs or drug use. R.R. at 508a–510a. Dr. Cheponis opined, within a reasonable degree of medical certainty, that Decedent contracted the hepatitis B through a work-related accident such as a needle

---

**3.** Claimant testified that although Decedent would give himself daily insulin injections, he used disposable needles and never used the same needle twice. R.R. at 40a–41a.

stick. R.R. at 512a–513a. Dr. Graham also testified that she had eliminated all other possible sources of the infection (R.R. at 142a), and that the most likely source was Decedent's employment. R.R. at 149a. Dr. Graham also opined that the hepatitis B infection was a substantial contributing factor in Decedent's death. R.R. at 153a–154a.

In light of our standard of review of the referee's findings of fact, we conclude that the evidence of record is sufficient for a reasonable mind to accept as adequate proof of the fact that Decedent had been exposed to hepatitis B in the course of his employment and that the resulting fulminant hepatitis infection was a substantial contributing factor in his death.

■ Although Employer did introduce the deposition testimony of Dr. Winkelman and Dr. Wecht, the referee accepted the opinions of Claimant's medical witnesses as more credible, as evidenced by the finding that Decedent did incur hepatitis B from the workplace and that this was a substantial contributing factor in his death. *See* Finding of Fact (F.F.) No. 38; R.R. at 1055a. As noted, it is well established that the referee, as the ultimate fact finder, has wide latitude in weighing the probative value of testimony and may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *See also Kraemer v. Workmen's Compensation Appeal Board (Perkiomen Valley School District),* 82 Pa.Commonwealth Ct. 469, 473, 474 A.2d 1236, 1238 (1984). Accordingly, we conclude that the referee did not err in determining that Decedent was exposed, during the course of his employment, to hepatitis B, an occupational disease listed in Section 108(m) of the Act, 27 P.S. § 27.1(m), and that, in accordance *Jackson Township Volunteer Fire Company,* this exposure constituted an "injury" under Section 301(c)(1) of the Act, 77 P.S. § 411(1), and was also a substantial contributing factor in his death.

■ We further conclude that the removal of waste material from blood processing facilities (such as hospitals) was properly considered by the referee to be an auxiliary service of hospital workers under Section 108(m) of the Act, 77 P.S. § 27.1(m). *See* Conclusion of Law No. 4, R.R. at 1057a. This

finding is supported by the testimony that Decedent would on occasion handle medical waste. We also consider the removal and disposal of medical waste to be one of the final stages of "processing." Consequently, Decedent is entitled to the statutory presumption in Section 108(m) of the Act, 77 P.S. § 27.1, that he contracted the hepatitis B virus during the course of his employment. As a result, we need not address Employer's contention that Claimant cannot recover because she did not meet her burden of showing that there is a substantially greater incidence of hepatitis B in refuse collection workers than in the general population.

The order of the Board is affirmed.

## ORDER

AND NOW, this 18th day of November, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned proceeding is affirmed.