Robert C. ALLINGHAM, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (CITY OF PITTSBURGH), Respondent.

Commonwealth Court of Pennsylvania.

Submitted March 10, 1995.

Decided May 15, 1995.

---

Ronald P. Koerner, for petitioner.

Fred C. Soilis, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Robert C. Allingham (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) that affirmed a referee's decision denying benefits to Claimant. We affirm.

Claimant worked as a fire fighter for the City of Pittsburgh (Employer) beginning in July, 1964, and rose to the position of captain. In 1973, Claimant suffered a myocardial infarction. After undergoing successful coronary by-pass surgery, Claimant resumed his duties full time until November, 1989. He had begun to experience fatigue while working and sought treatment from the physician who had performed the by-pass surgery and provided yearly follow-up care. Subsequent to undergoing electrocardiograms, chest x-rays, a stress test and a catheterization, Claimant indicated to Employer that he could no longer work and considered himself retired as of December 17, 1989.

On May 11, 1990, Claimant filed a claim petition, alleging that he was totally disabled as a result of an occupational disease and that benefits were due him pursuant to Section 108 of The Pennsylvania Workmen's Compensation Act (Act).[1] At hearings before the referee,[2] Claimant testified on his own behalf and presented the deposition testimony of Marc D. Laufe, M.D., who examined Claimant on one occasion at the behest of Claimant's counsel. Employer presented the deposition testimony of Larry Edward Hurwitz, M.D., who examined Claimant on one occasion at the request of Employer.

In his decision, the referee set out a summary of the witnesses' testimony. The testimony of the medical witnesses relates the factors upon which each expert relied, including a rendition of the Claimant's medical history, the results of a physical examination and the review of Claimant's tests. Dr. Laufe opined that Claimant had significant coronary artery disease and, due to this dis-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1. The specific occupational disease at issue in this case is listed at Section 108(*o*) of the Act, 77 P.S. § 27.1(*o*), which provides:

 (*o*) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-

exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.

2. The testimony was heard by Referee Rosalia G. Parker; however, Referee David Torrey rendered the decision upon reassignment. Notice of this transfer was given to the parties, but no objection was made.

ease, Claimant should not continue his duties as a fire fighter. Dr. Laufe further indicated that Claimant was disabled from fire fighting because of his heart disease. Dr. Hurwitz agreed that Claimant suffered from coronary artery disease caused by his work as a fire fighter, but opined that Claimant's work-related disease did not contribute to his present disability. Based on his summary of the witnesses' testimony, the referee set out the following findings of fact:

(a) The claimant, on November 7, 1989, completed his final day of work as a firefighter. At that time he was fighting a fire and felt the onset of fatigue. For about eight months prior to that, he had felt the onset of feelings of fatigue. He did not think he could do his job as a firefighter Since that time, he has been off of work. He retired with 25 years completed as a firefighter on December 17, 1989. He has not worked since that time.

(b) The claimant has coronary artery disease. In so finding, your referee accepts as substantial, competent and credible the testimony of Drs. Laufe and Hurwitz.

(c) The claimant's coronary artery disease was caused in significant contributing part by extreme over-exertion in times of stress and by exposure to heat, smoke, fumes, or gasses, arising directly out of his employment as a fireman. In so concluding, your referee accepts as credible the testimony of Dr. Laufe.

(d) Although the claimant has a work-related coronary artery disease, it did not, as of November 7, 1989 operate to disable him from work. In so concluding, your referee accepts as substantial, competent and credible the testimony of Dr. Hurwitz that claimant's coronary disease does not work to disable him and that, instead, any inability to labor because of fatigue is due to the effects of deconditioning, an over-weight condition and the effects of aging. Your referee, in this regard, notes that the

claimant did not advance any evidence from the claimant's treating cardiac physicians to the effect that he is disabled from work because of coronary artery disease.

(e) The claimant is currently disabled, but from non-work-related causes.

(Referee's decision, p. 5.) Thus, the referee denied Claimant's petition. He concluded that Claimant demonstrated that he suffered from an occupational disease compensable under Section 108(o) of the Act, but that Claimant failed to meet his burden of proving that he was disabled as a result of a work-related occupational disease. The Board affirmed.

On appeal,[3] Claimant raises the following two issues for our review: (1) whether substantial evidence supports the referee's findings that Claimant's disability was not caused by his work-related coronary artery disease but by deconditioning, excessive weight and aging, non-work-related factors; and (2) whether the referee erred in drawing an adverse inference against Claimant due to his failure to call his treating physicians.

 Claimant first argues that the referee's reliance on Dr. Hurwitz's testimony is in error because this testimony is incompetent as a matter of law, citing *Marcks v. Workmen's Compensation Appeal Board (City of Allentown)*, 119 Pa.Commonwealth Ct. 214, 547 A.2d 460 (1988), and cases cited therein. Specifically, Claimant quotes a portion of Dr. Hurwitz's testimony in which the doctor indicates that the repeated exposure did not worsen Claimant's heart disease, and that there is no scientific basis for the assumption that chronic exposure worsens the disease. Claimant further contends that this testimony contradicts the presumption set out in Section 108(o) of the Act that diseases of the heart and lung are caused and aggravated by the overexertion and exposure to the fumes, smoke and heat which fire fighters face in their profession.[4]

---

3. Our scope of review in a workmen's compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensa-*

*tion Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

4. Claimant's argument concerning a Section 108(o) presumption should actually reference Section 301(e) of the Act, added by Section 3 of

In *Marcks*, the expert stated that the claimant's thirty-three years of exposure as a fire fighter had a "practically non-existent effect" on the claimant's heart and lungs. The court held that the medical expert's opinion was equivocal, inconsistent with the claimant's history and contrary to the Section 301(e) presumption. The court further pointed out that it could not understand how the employer's expert could pronounce the claimant disabled and unable to work in an occupation where he may be exposed to smoke and dust, but then find that the claimant's disability was unrelated to the smoke and dust that the claimant was exposed to during his former occupation as a fire fighter.

Apparently Claimant relies on this language in *Marcks*, but the case before us is distinguishable. In *Marcks*, the issue was whether the claimant had proved the cause of his disease, while here the issue concerns the cause of the disability. The expert in *Marcks*, credited by the referee, disregarded the Section 301(e) presumption, finding the claimant disabled but not because of his occupation, but providing no alternative reason or cause for the disability. Here, Employer's medical expert, Dr. Hurwitz, stated that Claimant had coronary artery disease which occurred as a result of Claimant's exposure over the years to the hazards arising from being a fire fighter. But Dr. Hurwitz believed that Claimant's present disability was caused by deconditioning, an over-weight condition and the effects of aging. He testified that Claimant's complaint of fatigue is a general symptom and for fatigue to be related to coronary artery disease it must be accompanied by some specific conditions, such as significant heart muscle dysfunction or vessel obstruction to significant portions of the heart muscle. Dr. Hurwitz did not find that these conditions were present in Claimant. Thus, he opined that Claimant's disability was not related to Claimant's occupational induced disease, but had non-work-related causes.

In *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 142 Pa.Commonwealth Ct. 176, 194–95, 597 A.2d 182, 191–92 (1991), *rev'd on other grounds*, 534 Pa. 327, 632 A.2d 1302 (1993), the court provides an explanation of the burden of proof required of a claimant filing an occupational disease claim petition as follows:

On a claim petition, the claimant has the burden of establishing each of the elements necessary to sustain an award.... To become eligible for compensation under the occupational disease provisions, section 108 of the act, 77 P.S. § 27.1, requires that a claimant prove: (1) a disability resulting from a disease enumerated in section 108; and (2) the disease arose out of and was related to claimant's employment....

If the claimant establishes that he or she has an enumerated occupational disease and that he or she had been employed in an industry in which the occupational disease was a hazard, the claimant is entitled to the rebuttable presumption that the disease arose out of and in the course of employment.... Although proof of such an occupational disease will relieve the claimant of the burden of proving that the disability arose out of and was related to his employment, *disability* from the disease *is not presumed* under the act, and the existence of the disease is not *per se* compensable....

For workmen's compensation purposes, 'disability' is synonymous with 'loss of earning power.' ... A claimant who establishes the existence of an occupational disease enumerated in section 108 and who is entitled to the section 301(e) presumption that the disease 'arose out of and in

the Act of October 17, 1972, P.L. 930, 77 P.S. § 413, which states:

If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

The Section 301(e) presumption applies to the enumerated diseases listed in Section 108, including Section 108(*o*) quoted in footnote number one. *See Edwards v. Workmen's Compensation Appeal Board (Hunlock Township)*, 137 Pa.Commonwealth Ct. 70, 585 A.2d 56 (1990) *petition for allowance of appeal denied*, 528 Pa. 633, 598 A.2d 286 (1991).

the course of his employment,' must nevertheless show that he or she was *disabled* (lost earning power) as a result of the disease. (Citations and footnote omitted. Emphasis in original.)

Although Claimant here has proven that he suffers from an occupational disease, i.e., that his heart disease arose out of and was related to his employment, he has not proven that his disability resulted from his occupational disease. Nor has Claimant shown that the referee's finding of fact concerning Employer's medical expert's testimony is incompetent as a matter of law. The *Marcks* opinion stands for the proposition that the presumption applies to a claimant's burden establishing that an occupational disease exists; the presumption does not provide a basis for proving that the disease creates the disability. Our review of the record reveals that substantial evidence supports the referee's findings of a non-work-related disability.

■ We now turn to Claimant's second argument concerning whether the referee relied on an impermissible inference because Claimant failed to call one of his treating physicians, S. Palani Samy, M.D. The referee stated in Finding of Fact 10 that "[t]the claimant did not adduce the testimony, or submit any other type of evidence, from Dr. Samy, or any physician in his group." (Referee's decision, p. 3.) The referee also stated as part of Finding of Fact 14(d) that "[y]our referee, in this regard, notes that the claimant did not advance any evidence from the claimant's treating cardiac physicians to the effect that he is disabled from work because of coronary artery disease." (Referee's decision, p. 5.)

The "missing witness" rule has been defined in *Haas v. Kasnot*, 371 Pa. 580, 584, 92 A.2d 171, 173 (1952) (quoting *Wills v. Hardcastle*, 19 Pa. Superior Ct. 525, 529 (1902)) as follows:

Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him.

In the case of *Holshue v. Workmen's Compensation Appeal Board (Robideau Express)*, 84 Pa.Commonwealth Ct. 253, 479 A.2d 42 (1984), this Court agreed that the referee is permitted, although not required, to draw an adverse inference where the claimant did not call some of his attending physicians. However, the Supreme Court of Pennsylvania, in *Bentivoglio v. Ralston*, 447 Pa. 24, 288 A.2d 745 (1972), a personal injury case, held that the trial judge committed prejudicial error by instructing the jury that it might draw an adverse inference because the plaintiff had failed to call some attending physicians as witnesses. The *Bentivoglio* court stated that "this rule [missing witness rule] is inapplicable if such witness is equally available to both sides of the litigation.... In other words, the inference is permitted only where the uncalled witness is peculiarly within the reach and knowledge of only one of the parties." *Id.* at 29, 288 A.2d at 748.

*Bentivoglio* was found controlling by the Superior Court in *O'Rourke v. Rao*, 411 Pa. Superior Ct. 609, 602 A.2d 362 (1992), where the facts also fell within this exception to the missing witness rule. This Court's decision in *Holshue* relied on *Ferne v. Chadderton*, 363 Pa. 191, 69 A.2d 104 (1949), a case that antedates the *Bentivoglio* decision. Employer in this case does not argue there is any rational basis for applying the missing witness rule differently in workmen's compensation cases and personal injury cases.

In the case at bar, Dr. Samy and his associates were known and equally available to Claimant and Employer. Under these circumstances, there was no legal significance to the lack of testimony from Claimant's treating cardiac physicians.

■ However, only *necessary* findings of fact need to be supported by substantial evidence. *Peoples First National Bank v. Unemployment Compensation Board of Review*, 159 Pa.Commonwealth Ct. 134, 632 A.2d 1014 (1993). In his decision, the referee clearly held on the basis of substantial evidence that while Claimant has a work-related coronary artery disease, it did not disable him from work; that he accepted as substantial, competent and credible the testimony of Employer's physician that Claimant's coronary ar-

tery disease did not disable him from work and that his inability to labor because of fatigue was due to the effects of deconditioning, overweight, and the effects of aging. These are the necessary findings of fact required to support the referee's determination that Claimant failed to prove he was disabled from a work-related occupational disease. The referee's further finding that Claimant had not called his treating cardiac physicians to testify was not necessary to support his decision, and under these circumstances was superfluous.

Accordingly, we affirm the Board's order.

### ORDER

NOW, May 15, 1995, the order of the Workmen's Compensation Appeal Board, dated April 19, 1994, in the above matter, is affirmed.