CITY OF PHILADELPHIA, Petitioner

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (COSPELICH),**
Respondent.

Stephen Cospelich, Petitioner

v.

Workers' Compensation Appeal Board
(City of Philadelphia),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 21, 2005.

Decided Feb. 15, 2006.

Maria Terpolilli, Philadelphia, for petitioner.

Martin G. Malloy, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Stephen Cospelich and the City of Philadelphia (City), his employer, cross appeal from the order of the Workers' Compensation Appeal Board (Board) that affirmed the grant of Cospelich's claim petition seeking payment of medical bills associated with treatment of Cospelich's hepatitis C. The City primarily contends on appeal that the Board erred in affirming the grant of the claim petition because: (1) the Workers' Compensation Act (Act)[1] did not recognize hepatitis C as an occupational disease at the time that Cospelich was diagnosed and the subsequent amendment to the Act recognizing hepatitis C cannot be applied retroactively; (2) Cospelich was not disabled from the disease in that he had not sustained a loss in earnings; and (3) the Workers' Compensation Judge (WCJ) erred in concluding that Cospelich sustained an injury under Section 301(c)(1) of the Act, 77 P.S. § 411(c)(1). In his appeal, Cospelich contends that he was entitled to unreasonable contest attorney fees and that the Board erred in approving his attorney's fee in the amount of 13% rather than the petition for quantum meruit since no compensation was awarded. After review, we affirm.

Cospelich joined the Philadelphia Fire Department in 1985. In July of 1999, Cospelich tested positive for hepatitis C.[2]

Almost immediately thereafter, he wrote a letter to the fire commissioner informing him of his diagnosis and his belief that such was contracted as a result of his employment as a firefighter/EMT.[3] Approximately three years later, in August 2002, Cospelich filed a claim petition against employer, averring that he contracted hepatitis C in the course of his employment and seeking payment of medical bills and unreasonable contest fees. Employer denied the averments of the petition and the matter was litigated before the WCJ.

Cospelich, whom the WCJ found entirely credible, accepting his testimony as fact, testified that while working for employer, he responded to accidents, shootings, stabbings, childbirths and medical runs. During this work, Cospelich performed CPR and came into contact with blood and bodily fluids, primarily with his hands but also with his arms and face.[4] In addition, he sustained scratches on his hands during his work activities and occasionally had cuts on his face as a result of shaving.

During his employment with the City, Cospelich also worked for several other employers. In 1987, he worked for Paramedical Medical Services for six to eight months transporting patients in non-emergency situations. Cospelich held similar positions with two other employers, one in

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

2. Hepatitis C is a virus that attacks the liver and "can cause, slowly over a period of 10 to 20 years, chronic Hepatitis and cirrhosis. If the liver becomes cirrhotic, there is a significant chance of needing a liver transplant and/or dying." *Cospelich v. City of Philadelphia*, Workers' Compensation Judge's finding of fact no. 10(b) (Decision dated May 25, 2004).

3. Emergency medical technician.

4. According to Cospelich, although gloves began to be regularly assigned to the fire stations in the 1980s, the stations did not always have them. In addition, the gloves were often too small for him because he is 6'5" tall and weighs 260 pounds. Cospelich also noted that the spine boards that the firefighters used were originally cleaned only with alcohol; the current practice is to clean the boards with bleach. Finally, firefighters were not assigned an individual face mask until four years ago. Prior to that time, the firefighters shared masks, which were often not cleaned after each use.

1988 and the other in 1993 and 1994. Each of these positions involved very little exposure to blood.[5] Thereafter, beginning in 2000, Cospelich worked for one or two years at the Baptist Nursing Home providing security; he was not exposed to any blood or bodily fluids in that position. Finally, Cospelich works for Physician's Choice Ambulance less than 32 hours a week transporting patients to rehab.

With respect to other possible sources of exposure to or risk factors for the virus, Cospelich testified that he was in the service for five years during the early 1970s and during that time he was treated for hepatitis A. Cospelich has never sustained a needle stick, undergone a body piercing, used IV drugs, engaged in a homosexual relationship or engaged in sexual relations with another woman while married. Both Cospelich's present wife, to whom he has been married since 1995, and his former wife, to whom he was married for ten years, have tested negative for the virus. Both Cospelich and his wife got tattoos in either 1997 or 1998.

In support of his claim, Cospelich also submitted the deposition testimony of his treating physician, Dr. Rothstein, who has a specialty in gastroenterology and subspecialty in hepatology. Dr. Rothstein, whom the WCJ also found to be credible, accepting his testimony as fact, testified, in part, that a November 1999 liver biopsy demonstrated moderate inflammation and significant scarring in Cospelich's liver; these findings indicated that the liver was "on the way to being cirrhotic." While Cospelich had a history of alcohol problems, the biopsy did not reveal any evidence of alcoholic liver disease. Dr. Rothstein noted that Cospelich's risk factors for hepatitis C were his hepatitis A, excessive

alcohol use, family history of liver disease, professional tattoo, and 15 years of employment as a firefighter and first responder wherein he was exposed to blood and bodily fluids. As to the tattoo, Dr. Rothstein opined that Cospelich's liver disease was more advanced than would be expected if he had contracted the virus via the tattoo. Dr. Rothstein also explained the current treatment for hepatitis and the likely side effects, noting that while a majority of people continue to work while undergoing treatment, those with physical jobs have a more difficult time working while being treated. Based upon his review of the medical records, Cospelich's known risk factors and his examination and treatment of Cospelich, Dr. Rothstein opined that Cospelich acquired the virus through his occupational exposure to blood and bodily fluids as a firefighter.

With respect to attorney's fees, Cospelich submitted into evidence his fee agreement with his attorney, which provided that his attorney was to receive:

> 13% of whatever is recovered by either settlement, or verdict on a claim petition, or entry of appearance on all other petitions. In the event there is no recovery, it is understood that [Cospelich is] not liable for costs and expenses. [Cospelich is] only liable for expenses if [he] terminates [the] fee agreement.

See Exhibit C5, hearing of October 17, 2002. Notwithstanding the executed fee agreement, Cospelich's counsel submitted a petition for quantum meruit, requesting fees in the amount of approximately $11,000.00.

In opposition to Cospelich's evidence, employer presented the deposition testimony of Dr. Gluckman, whose practice in-

---

5. Cospelich always wore gloves while working at these second jobs and did not encounter any problems with the gloves tearing.

cludes general medicine and infectious diseases. The WCJ ultimately found Dr. Gluckman to be less credible than Dr. Rothman and, therefore, rejected his opinion whenever inconsistent. The most significant aspect of Dr. Gluckman's testimony was his opinion that Cospelich acquired the virus as a result of IV drug use as a young man. This opinion was based primarily upon an unsigned note contained in another doctor's file regarding Cospelich's medical history.

Based upon the above noted credibility findings, the WCJ granted Cospelich's claim petition, finding that Cospelich acquired hepatitis C from exposure to blood and bodily fluids in the course and scope of his employment with employer.[6] Further, the WCJ found that Cospelich gave timely notice of his disease and that he also sustained his burden of establishing that he sustained a work-related illness within the meaning of Section 301(c)(1) of the Act, 77 P.S. § 411(1). Consequently, the WCJ ordered that employer was responsible for Cospelich's reasonable and necessary medical expenses. Finally, the WCJ found that employer engaged in a reasonable contest and approved the fee agreement entered into by Cospelich and his attorney. Both parties appealed to the Board, which affirmed. The present appeal followed.

■ We will address employer's contentions first.[7] Employer contends that the Board erred in affirming the grant of Cospelich's claim petition because at the time that Cospelich was diagnosed with hepatitis C, the Act did not recognize hepatitis C as an occupational disease and firefighters were not included as a group at risk for similar viruses. Employer further argues that the subsequent amendment to the Act in 2001, recognizing hepatitis C as an occupational disease among firefighters, cannot be applied retroactively because it implicates a substantive right. These arguments need not be given great discussion because this court recently addressed both issues in *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sites)*, 889 A.2d 129 (2005).

Prior to discussing *Sites*, we note the statutory provisions applicable to occupational diseases covered by the Act. Prior to 2001, Section 108 of the Act provided as follows:

> The term "occupational disease," as used in this act, shall mean only the following diseases.
>
> . . . .
>
> (m) Tuberculosis, serum hepatitis, or infectious hepatitis in the occupations of blood processors, fractionators, nursing,

---

**6.** Prior to 2001, Section 108(m) of the Act, 77 P.S. § 27.1(m), provided that an occupational disease included, "[t]uberculosis, serum hepatitis, or infectious hepatitis in the occupations of blood processors, fractionators, nursing, or auxiliary services involving exposure to such diseases." The WCJ concluded that the occupation of firefighter/EMT constituted an "auxiliary service" and that hepatitis C constituted "infectious hepatitis." The WCJ also noted that Section 108 was amended in 2001 to provide that an occupational disease includes hepatitis C in such occupations as, *inter alia,* firefighters, emergency medical services personnel and paramedics, and that such amendment was procedural in nature. Therefore, the WCJ concluded that Cospelich's virus

constituted an occupational disease both before and after 2001. Consequently, the WCJ concluded that Cospelich was entitled to the rebuttable presumption set forth in Section 301(e) of the Act, 77 P.S. § 413 (providing that if the employee is employed immediately before the date of disability in an occupation in which his occupational disease was a hazard, it shall be presumed that the disease is work-related). The WCJ further concluded that employer failed to rebut the Section 301(e) presumption.

**7.** Employer has been designated as the respondent on appeal.

or auxiliary services involving exposure to such diseases.

77 P.S. § 27.1. In 2001, Section 108 was amended to expressly provide for hepatitis C.[8] As a result, an occupational disease was thereafter defined to include the following:

(m) Tuberculosis, serum hepatitis, infectious hepatitis or hepatitis C in the occupations of blood processors, fractionators, nursing, or auxiliary services involving exposure to such diseases.

(m.1) Hepatitis C in the occupations of professional and volunteer firefighters, volunteer ambulance corps personnel, volunteer rescue and lifesaving squad personnel, emergency medical services personnel and paramedics.... Hepatitis C in any of these occupations shall establish a presumption that such disease is an occupational disease within the meaning of this act, but this presumption shall not be conclusive and may be rebutted. This presumption shall be rebutted if the employer has established an employment screening program ... and testing pursuant to that program establishes that the employe incurred Hepatitis C virus prior to any job-related exposure.

Further, Section 301(e) of the Act, 77 P.S. § 413, provides a rebuttable statutory presumption that an occupational disease is work-related. Section 301(e) provides:

If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

In *Sites*, the claimant, who was also a City of Philadelphia firefighter trained in responding to medical emergencies, was diagnosed with hepatitis C in December 1999, and filed his claim petition against the City seeking total disability benefits in November 2002. The City, represented by one of the same attorneys as in the present case, argued that the claimant was not entitled to compensation because the Act did not recognize hepatitis C as an occupational disease when the claimant first missed work due to the disease (2000) and that firefighting did not constitute an "auxiliary service" for purposes of Section 108(m). Employer also argued that the subsequent amendment to Section 108, adding hepatitis C to subsection (m) as well as all of subsection (m.1), could not be applied retroactively.

This court rejected each of employer's arguments, ultimately holding:

In sum, consistent with our precedent in *Jeannette District [Memorial Hospital v. Workmen's Compensation Appeal Board (Mesich)*, 668 A.2d 249 (Pa. Cmwlth.1995)] and *Sun Home [Health Visiting Nurses v. Workers' Compensation Appeal Board (Noguchi)*, 815 A.2d 1156 (Pa.Cmwlth.2003)], we hold that Claimant was entitled to compensation under Section 108(m) of the Act, in both its 1972 and 2001 versions. Hepatitis C is a type of "infectious hepatitis" that Section 108(m) recognizes to be an occupational disease for persons engaged in "auxiliary services," such as first responding, which expose workers to blood and bodily fluids that carry the virus.[9]

8. Added by Section 1 of the Act of December 20, 2001, P.L. 967.

9. Earlier, the court in *Sites* observed:

There is no dispute that Claimant was directly exposed to blood and bodily fluids in his work.... As such, Claimant's occupation is precisely the type of occupation that would constitute "auxiliary services"

We further hold that Claimant's claim was also governed by Section 108(m.1) of the Act because it was the law at the time Claimant filed his petition, and the statute of limitations had not yet run. Thus, the Board correctly applied Section 108(m) and (m.1) of the Act to Claimant's petition.

889 A.2d at 140 (footnote added). Accordingly, this court affirmed the award of benefits to the claimant in *Sites*, concluding that his hepatitis C constituted an occupational disease under Section 108(m) before its amendment and under subsection 108(m.1) as amended. This holding commands the same conclusion here. Consequently, we conclude that the Board and WCJ correctly held that Cospelich's hepatitis C, found to be contracted while working as a fireman, constituted an occupational disease under both Section 108(m) before its amendment and subsection (m.1).

 Next, employer contends that the Board erred in affirming the grant of Cospelich's petition because Cospelich failed to establish any disability (loss of earning power) resulting from his disease. According to employer, an injury is compensable as an occupational disease only if the claimant has sustained a loss of earnings.[10] In support of this assertion, employer relies on several cases which do indeed generally state that in order to be eligible for compensation under the occupational disease provisions of the Act, a claimant must prove disability (synonymous with loss of earning power). *See generally Buchanan v. Workmen's Comp. Appeal Bd. (City of Philadelphia)*, 659 A.2d 54, 55 (Pa.Cmwlth.1995) (stating that, a claimant proceeding under Section 108 of the Act must establish that he is suffering from and disabled by the particular occupational disease); *Allingham v. Workmen's Comp. Appeal Bd. (City of Pittsburgh)*, 659 A.2d 49, 52 (Pa.Cmwlth.1995) (noting that, in order to be eligible for compensation under the occupational disease provisions of the Act, "section 108 of the Act requires that a claimant prove: (1) a disability resulting from a disease enumerated in section 108; and (2) the disease arose out of and was related to claimant's employment....").

because it involves exposure to the infectious diseases enumerated in Section 108(m). *See, e.g., Browning–Ferris [Ind.] v. Workmen's [Comp]. Appeal [Bd.]([Jones)]*, 151 Pa.Cmwlth. 529, 617 A.2d 846, 850 (1992) (removal of waste material from hospitals found to be an "auxiliary service" under Section 108(m) because of evidence of routine and direct exposure to items contaminated with blood and bodily fluids, thereby entitling a refuse worker to the statutory presumption set forth in Section 108(m) of the Act). 889 A.2d at 139–40.

10. We note that throughout its brief, employer refers to Cospelich's petition as a claim under the Occupation Disease Act. However, the claim petition is a completed Bureau of Labor and Industry form entitled, "Claim Petition for Workers' Compensation." Moreover, none of the averments contained in the petition indicate that benefits are sought under the Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §§ 1201 –1603, rather than the occupational disease provisions contained in the Workers' Compensation Act. Obviously, the WCJ treated the petition as one made under the Workers' Compensation Act as she only discussed the applicable provisions contained therein. Section 444 of the Workers' Compensation Act, *added by* the Act of October 17, 1972, P.L. 930, 77 P.S. § 1000, provides:

No person who is qualified for or is receiving compensation under this act, shall, with respect to the same period, receive compensation under The Pennsylvania Occupational Disease Act: Provided, however, That any person may pursue, in the alternative, a claim for compensation under this act and a claim for compensation under The Pennsylvania Occupational Disease Act. [footnote omitted].

We conclude that the cases relied upon by employer are distinguishable. In each of the cases cited, the claimant was seeking total or partial disability benefits as a result of an occupational disease and the issues before the court involved, inter alia, whether the claimant had met his burden of proving that he was in fact disabled by the occupational disease. Here, Cospelich has not alleged that he is disabled, nor sought compensation benefits. Our research has not revealed any appellate decisional law holding that a claimant suffering from an occupational disease was not entitled to payment of reasonable and necessary medical expenses because the disease had not yet caused the claimant to sustain a loss of earnings. Moreover, such a holding would be inconsistent with both the Act and other settled decisions of this court. Section 306(f.1)(1) of the Act, *as amended*, 77 P.S. § 531(1) provides, in pertinent part:

(i) The employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, . . . .

(ii) In addition to the above service, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances, and prostheses in accordance with this section. . . . *The provisions of this section shall apply to injuries whether or not loss of earning power occurs. . . .*

(Emphasis added). Thus, the Act requires an employer to pay for work-related medical expenses whether or not a loss of earnings has occurred.

In *Odd Fellow's Home of Pennsylvania v. Workmen's Comp. Appeal Bd. (Cook)*, 144 Pa.Cmwlth. 280, 601 A.2d 465 (1991),[11] this court discussed the same principle established by the precursor to Section 306(f.1), opining:

[Employer] also argues that the [WCJ] erred in determining that [claimant] was entitled to an award for reimbursement of medical expenses pursuant to section 306(f) of the act, 77 P.S. § 531. Although we hold that [claimant] has failed to prove a disability, the denial of disability benefits is not inconsistent with an award for medical expenses incurred for treatment of a work-related injury. An employee is not required to show that an injury resulted in loss of earnings to permit receipt of reimbursement for medical expenses. As subsection 4 of section 306 of the act provides:

The employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances. . . . The provisions of this section shall apply in injuries whether or not loss of earning power occurs.[12]

*Id.* at 471 (citations omitted, footnote added). *Accord Canestrale v. Workmen's Comp. Appeal Bd. (Wheeling Pittsburgh Steel)*, 160 Pa.Cmwlth. 361, 634 A.2d 841 (1993). Indeed, it is now well-established that an employer should issue a notice of compensation payable/denial in a "medical only" claim or risk the imposition of penalties for a violation of the Act. *See Orenich v. Workers' Comp. Appeal Bd. (Geisinger Wyoming Valley Med. Ctr.)*, 863 A.2d 165 (Pa.Cmwlth.2004), *appeal denied*, 584 Pa. 682, 880 A.2d 1242 (2005).[13] According, we

---

**11.** *Odd Fellow's* involved a low back injury rather than an occupational disease.

**12.** While Section 306(f) has since been amended and renumbered to Section 306(f.1),

this obligation has not changed. *See* Section 306(f.1)(1)(i) and (ii).

**13.** As this court noted in *Orenich,* as of May 29, 2004, the Bureau of Workers' Compensation has issued a new notice of compensation

conclude that the Board and WCJ did not err in concluding that Cospelich was entitled to medical benefits relating to his hepatitis C despite not having incurred any loss of earnings.[14]

In conjunction with the above argument, employer contends that Cospelich's lack of disability precludes application of the presumption set forth in Section 301(e), 77 P.S. § 413. The Section 301(e) presumption "is an evidentiary advantage for a claimant who has contracted an 'occupational disease' in an occupation or industry in which such disease is a hazard," *City of Philadelphia v. Workers' Comp. Appeal Bd. (Rilling)*, 827 A.2d 1258, 1262 (Pa. Cmwlth.2003), *appeal denied*, 578 Pa. 717, 854 A.2d 968 (2003); in such cases, the claimant is entitled to the rebuttable presumption that the occupational disease arose out of and in the course of his employment. *Allingham*, 659 A.2d at 52 [*citing Hebden v. Workmen's Comp. Appeal Bd. (Bethenergy Mines, Inc.)*], 142 Pa. Cmwlth. 176, 597 A.2d 182, 191–92 (1991), *rev'd on other grounds*, 534 Pa. 327, 632 A.2d 1302 (1993) ]. In addition to the presumption established by Section 301(e),

Section 108(m.1) contains a presumption specifically for firefighters who sustain hepatitis C while engaged in their occupation. Unlike the presumption in Section 301(e), that in Section 108(m.1) does not even use the term disability, so cannot even arguably require loss of earnings for the presumption to apply.[15] Thus, we conclude that the WCJ did not err in applying the presumption in this case.[16]

Employer also argues that the WCJ erred in concluding that Cospelich sustained an injury under Section 301(c) because Cospelich alleged an occupational disease and not an injury under Section 301(c).[17] While we do not believe that Cospelich's claim petition can be properly characterized as asserting a claim under Section 108 of the Act rather than Section 301, it is well-established that " 'the form of the petition is not controlling where the facts warrant relief, and that if a claimant is entitled to relief under any section of the Act, his petition will be considered as filed under that section.' " *Pittsburgh Bd. of Educ. v. Workmen's Comp. Appeal Bd. (Perkins)*, 108 Pa.Cmwlth. 361, 529 A.2d 1166, 1169 n.5 (1987) (citation omitted).

payable with language that permits a "medical only" claim. *Id.* at 169 n.5.

14. In reaching this conclusion, we have considered the text of both Sections 301(c)(2) (defining "injury" to include *occupational disease* as defined in Section 108 of the Act) and 311 (requiring a claimant to give employer notice of the injury within 21 days of the injury), *as amended*, 77 P.S. §§ 411(2) and 631, respectively.

15. The requirement that a claimant must prove disability to be entitled to the Section 301(e) presumption seems illogical since the presumption only relieves the claimant from proving that his occupational disease arose in the course of his employment.

16. Even if Cospelich was not entitled to the presumption, he directly established that the conditions under which he worked exposed

him to the hazard of contracting hepatitis C. The credited medical testimony was sufficient to establish causation absent any presumption. Moreover, the WCJ found that "[c]laimant acquired Hepatitis C from exposure to blood and bodily fluids in the course and scope of his employment with [employer]." WCJ's decision at 7, Finding of fact no. 17 (Claim no. 2423606, mailed May 28, 2004).

17. Section 301(c)(1) provides:

The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury. . . .

77 P.S. § 411(1).

This court has found no error where a WCJ awards benefits under a provision of the Act different from that under which the petition was filed or the case tried. *See, e.g., Pittsburgh Bd. of Educ.; Long v. Workmen's Comp. Appeal Bd. (Anchor Container Corp.)*, 95 Pa.Cmwlth. 242, 505 A.2d 369 (1986).

■ Employer also contends that Cospelich has failed to meet his burden to prove an injury under Section 301(c)(1). In order to be entitled to benefits for a Section 301(c)(1) injury, the claimant must prove that the injury arose in the course of employment, and that the injury was related to that employment. *Pawlosky v. Workmen's Comp. Appeal Bd. (Latrobe Brewing Co.)*, 514 Pa. 450, 525 A.2d 1204 (1987). Here, while Dr. Rothstein testified to various factors that placed Cospelich at risk of developing hepatitis C, he ultimately opined based upon his examination of Cospelich, review of medical records, test results and treatment, that Cospelich contracted the virus in the course of his employment as a firefighter. The WCJ found this opinion credible and accepted it as fact. In addition, the WCJ rejected employer's medical expert's opinion to the contrary. The rejection of employer's medical evidence is a credibility determination not subject to our review. Accordingly, we conclude that Cospelich met his burden of proving that he sustained an injury pursuant to Section 301(c)(1).

■ Finally, employer contends that the Board erred in affirming the grant of Cospelich's claim petition because the claim is barred by the statute of limitations set forth at Section 315 of the Act, 77 P.S. § 602. Section 315 bars an occupa-

tional disease claim filed more than three years after the "injury," which the statutory provision defines as "disability resulting from occupational disease." Here, Cospelich has filed his claim before he has even sustained any disability; thus, his petition cannot be said to be barred by Section 315. *See also Sites.*

■ We now turn to Cospelich's appeal. Cospelich contends that the Board erred in affirming the denial of unreasonable contest attorney fees.[18] "A reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences and there is an absence of evidence that an employer's contest was frivolous or filed to harass a claimant." *Orenich*, 863 A.2d at 171 (quotation omitted). Whether a contest is reasonable is a question of law, subject to this court's plenary review. *Id. See also Wertz v. Workmen's Comp. Appeal Bd. (Dep't of Corr.)*, 683 A.2d 1287 (Pa.Cmwlth.1996).

Here, employer's medical expert opined that the most common cause of hepatitis C in this country is intravenous drug use. In addition, because Cospelich's medical records contained a note indicating a past history of intravenous drug use, the doctor opined that such was the cause of Cospelich's virus. We conclude that this difference in medical opinion as to the cause of Cospelich's disease supports the conclusion that employer's contest was not filed to harass Cospelich. Moreover, while there ultimately proved to be no merit to employer's contentions regarding Cospelich's qualification for benefits under Section 108(m) prior to 2001 and Section 108(m.1) post 2001, the law was not so clear that employer's contest must be deemed to be

---

**18.** Pursuant to Section 440(a) of the Act, 77 P.S. § 996(a), where the claimant succeeds in a contested matter, the claimant shall be awarded "a reasonable sum for costs incurred for attorney's fee[s] . . . ." However, the cost for attorney's fees "may be excluded when a reasonable basis for the contest has been established by the employer or the insurer." *Id.* Section 440 was added by the Act of February 8, 1972, P.L. 25.

frivolous. Accordingly, the Board did not err in affirming the denial of unreasonable contest attorney's fees.

 Next, Cospelich contends that the WCJ should have awarded counsel fees pursuant to Section 442 of the Act,[19] 77 P.S. § 998, which provides:

All counsel fees, agreed upon by claimant and his attorneys, for services performed in matters before any [WCJ] or the board, whether or not allowed as part of a judgment, shall be approved by the [WCJ] or board as the case may be, providing the counsel fees do not exceed twenty per centum of the amount awarded at the discretion of the hearing official.

In cases where the efforts of claimant's counsel produce a result favorable to the claimant but where no immediate award of compensation is made such as in cases of termination or suspension the hearing official shall allow or award reasonable counsel fees, as agreed upon by claimant and his attorneys, without regard to any per centum.

Here, the fee agreement between Cospelich and his counsel, approved by the WCJ, limits counsel to 13% of any recovery; the agreement does not entitle counsel to an hourly fee in the absence of a recovery. Moreover, the record is devoid of any evidence that Cospelich and his attorneys entered into some other agreement, providing for a fee "without regard to any per centum" if an immediate award was not granted.[20] While we are sympathetic to counsel's dilemma, in these circumstances, we conclude counsel cannot petition for more than has been agreed to.

The quantum meruit petition would have been relevant only had unreasonable contest fees been awarded. Consequently, the Board did not err in affirming the WCJ's approval of the fee agreement rather than awarding fees pursuant to the petition for quantum meruit.

Based upon the foregoing, the order of the Board is affirmed.

### ORDER

AND NOW, this 15th day of February, 2006, the orders of the Workers' Compensation Appeal Board in the above captioned matters are hereby AFFIRMED.

---

**19.** Section 442 was added by the Act of February 8, 1972, P.L. 25.

**20.** While it is not clear whether or not Cospelich has incurred medical expenses to treat his disease, medical expenses may be included in calculation of the contingent fee. *Raulston v. Workmen's Comp. Appeal Bd. (Tri–State Motor Transit)*, 146 Pa.Cmwlth.635, 606 A.2d 668 (1992).