IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Peter DiLaqua, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| City of Philadelphia Fire Department | : | |
| (Workers' Compensation Appeal | : | |
| Board), | : | No. 1262 C.D. 2020 |
| Respondent | : | Argued: November 15, 2021 |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE COVEY                                                    FILED:  December 23, 2021


Peter DiLaqua (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) December 16, 2020 order that reversed the WC Judge's (WCJ) decision, thereby denying Claimant's Claim Petition for WC (Claim Petition).  Claimant presents two issues for this Court's review: (1) whether the Board erred by applying an incorrect burden of proof to the rebuttable presumption in Section 301(e) of the WC Act (Act)[1] (Presumption) and making findings of fact contrary to those made by the WCJ; and (2) whether the Board erred by ruling that Claimant failed to meet his burden of proving a work-related injury even without the Presumption.  After review, this Court reverses and remands.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 3 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 413.

## Background

The City of Philadelphia Fire Department (Employer) hired Claimant as a firefighter in 2003. After 2 years of fighting fires, Claimant spent 11 years working for Employer's Visual Communication Unit (VCU). Although Claimant's VCU duties consisted mostly of office work, he was also required to go to and photograph multiple-alarm fires, fire fatalities, and other accident scenes where he spent numerous hours directly exposed to soot and fire debris. *See* WCJ Finding of Fact (WCJ FOF) 6b, WCJ Dec. at 3 (Reproduced Record (R.R.) at 13a). "[Claimant's] eyes would tear and become red at the scenes. At the end of the day, his nasal mucous would be black and he coughed-up soot." *Id.* Over time, Claimant experienced asthma symptoms and he developed bronchitis approximately five times per year.

In August 2016, after undergoing testing, Claimant's doctor informed him that he "was suffering from RADS (Reactive Airways Dysfunction Syndrome)[,] which is a form of occupational asthma." R.R. at 91a. By August 22, 2016 letter, Claimant notified Employer of his RADS diagnosis and requested Employer to recognize his condition as a compensable work injury. *See* R.R. at 91a; *see also* WCJ FOF 6c, WCJ Dec. at 3-4 (R.R. at 13a-14a). On September 26, 2016, Employer rejected Claimant's request and issued a Notice of Denial. *See* R.R. at 151a-152a. Claimant continued to work for Employer until June 2018, when he left work due to an unrelated elbow injury.[2] *See* WCJ FOF 6d, WCJ Dec. at 4 (R.R. at 14a); *see also* R.R. at 57a-58a, 81a.

---

[2] In July 2018, the VCU became part of Employer's community outreach team (referred to in the record as CAT). *See* WCJ FOF 6d, WCJ Dec. at 4 (R.R. at 14a); *see also* R.R. at 56a-57a. Claimant has not yet worked for Employer as part of the CAT team because he was out for his elbow injury before the transfer occurred. *See* WCJ FOF 6d, WCJ Dec. at 4 (R.R. at 14a); *see also* R.R. at 57a-58a.

On August 23, 2018, Claimant filed the Claim Petition, therein seeking WC benefits for "[RADS,]" R.R. at 1a, caused by his exposure to smoke and toxic fumes at fire scenes from 2003 until June 2018. *See* R.R. at 2a-4a. Employer opposed the Claim Petition. *See* R.R. at 5a-10a.

The matter was assigned to a WCJ, who conducted hearings on September 20 and November 27, 2018, and May 16 and July 18, 2019. On November 14, 2019, the WCJ granted the Claim Petition for medical bills only,[3] declaring that Claimant met his burden of proving that his occupation as a fireman was a substantial cause of his pulmonary condition. *See* WCJ Dec. at 5 (R.R. at 15a). Employer appealed to the Board. On December 16, 2020, the Board reversed the WCJ's decision, ruling that the Presumption did not apply because Claimant failed to prove income loss, and Claimant's medical evidence did not support a finding that Claimant's pulmonary condition was work-related.[4] *See* Board Op. at 11 (R.R. at 34a). Claimant appealed to this Court.[5]

**Discussion**

Pursuant to Section 301(c)(1) of the Act, an employer is only liable to pay a claimant's medical expenses that arise from and are caused by a work-related injury. [*See*] 77 P.S. § 411(1). Initially, the claimant bears the burden of

---

[3] At the November 27, 2018 WCJ hearing, Claimant clarified that, since he was out of work due to his elbow injury, at that point, he was not claiming lost wages. *See* R.R. at 41a-42a; *see also* WCJ FOF 4, WCJ Dec. at 3 (R.R. at 13a). The WCJ specifically found: "There is no evidence that [Claimant] is suffering any loss of earnings due to this injury." WCJ FOF 11, WCJ Dec. at 6 (R.R. at 16a).

[4] One Board member dissented, stating: "Claimant satisfied the requirements to establish the [P]resumption in favor of Claimant pursuant to [Section 108(o) of the Act, added by Section 1 of the Act of October 17, 1972, P.L. 930]." Board Op. at 12 (R.R. at 35a).

[5] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 595 n.6 (Pa. Cmwlth. 2019).

> establishing that an injury is work-related. Generally, a
> claimant satisfies h[is] burden by presenting unequivocal
> medical evidence that establishes a causal connection
> between the alleged injury and the work incident.

*Roundtree v. Workers' Comp. Appeal Bd. (City of Phila.)*, 116 A.3d 140, 144 (Pa. Cmwlth. 2015) (citation omitted). Section 301(c)(2) of the Act defines injury to include an "occupational disease as defined in [S]ection 108 of th[e] [A]ct." 77 P.S. § 411(2). Section 108(o) of the Act lists among compensable occupational diseases:

> Diseases of the . . . lungs, resulting in either temporary or
> permanent total or partial disability[6] . . . , after four years
> or more of service in fire[]fighting . . . , caused . . . by
> exposure to heat, smoke, fumes or gasses, arising directly
> out of the employment of any such firemen.

77 P.S. § 27.1(o). This Court has explained that, "[t]o become eligible for compensation for an occupational disease under Section 108 of the Act . . . , a claimant must prove a disability resulting from a disease enumerated in Section 108 [of the Act,] and that the disease arose out of and was related to the claimant's employment." *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 605 (Pa. Cmwlth. 2019).

> However, pursuant to Section 301(e) of the Act:[7]
>
> If it be shown that the employe, at or immediately before
> the date of disability, was employed in any occupation or
> industry in which the occupational disease is a hazard, it
> shall be presumed that the employe's occupational disease
> arose out of and in the course of his employment, but this
> [P]resumption shall not be conclusive.

77 P.S. § 413. The Pennsylvania Supreme Court has explained:

---

[6] "[T]he term 'disability' is a term of art in the [WC] context. Generally, 'disability' is synonymous with loss of earning power resulting from a work-related injury." *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 612 (Pa. Cmwlth. 2018).

[7] Added by Section 3 of the Act of October 17, 1972, P.L. 930.

4

> [O]nce a claimant establishes that he suffers from an enumerated occupational disease, he is entitled to the [P]resumption that the disease arose during the course of his employment. The burden then shifts to the employer to rebut the [P]resumption with substantial, competent evidence. . . . "Medical evidence that relies on possibilities, or is less than positive, will not constitute legally competent evidence to establish causation." *Indus[.] Recision Serv[s.] v. W[orkers'] C[omp.] A[ppeal] B[d.] (Farbo)*, 808 A.2d 994 (Pa. Cmwlth. 2002).

*City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011) (citations omitted).

Claimant argues that the Board erred by applying an incorrect burden of proof to the Presumption and making findings of fact contrary to those made by the WCJ.

The Board reversed the WCJ's decision, in part, because the WCJ applied the Presumption to Claimant's medical-only Claim Petition, reasoning:

> A claimant is entitled to the [P]resumption only where the claimant has established that he contracted one of the diseases enumerated by Section 108 of the Act and that the disease has caused his disability. *Repash [v. Workers' Comp. Appeal Bd. (City of Phila.)*, 961 A.2d 227 (Pa. Cmwlth. 2008)]. . . . Here, Claimant indicated that he is not alleging disability related to his pulmonary issues. In fact, Claimant conceded that he is currently disabled due to a non-work-related elbow issue and sought only medical benefits for his pulmonary problems. [(*See* R.R. at 41a, 56a-57a)]. Likewise, Claimant has failed to establish that his lung disease enumerated in Section 108(o) of the Act caused disability, and therefore, Claimant is not entitled to the rebuttable [P]resumption. Because he was not entitled to the rebuttable [P]resumption, and we cannot say that Claimant's pulmonary issues were obviously connected to his work as a firefighter, it was Claimant's burden to establish through unequivocal medical evidence that his pulmonary issues were caused by his occupation.

Board Op. at 9-10 (R.R. at 32a-33a).

5

This Court recognizes that Claimant admitted to the WCJ that he had no lost income as a result of the injury listed in the Claim Petition, *see* R.R. at 41a, and the WCJ specifically found that "there is no evidence that [Claimant] is suffering any loss of earnings due to this injury." WCJ FOF 11, WCJ Dec. at 6 (R.R. at 16a). This Court also acknowledges its prior holdings that *disability* is a condition precedent to applying the Presumption.

> A claimant proceeding under Section 108(o) of the Act "must first establish that he or she is suffering from and [is] disabled by this particular occupational disease." *Buchanan v. Workmen's Comp*[.] *Appeal B*[*d.*] *(City of Phila*[.]*)*, 659 A.2d 54 (Pa. Cmwlth. 1995)[.] . . . Once a claimant establishes that he is suffering from and [is] disabled by the occupational disease, then the claimant is entitled to a [P]resumption that the occupational disease arose out of and in the course of his or her employment.

*Rex v. Workers' Comp. Appeal Bd. (City of Oil City)*, 879 A.2d 854, 862 (Pa. Cmwlth. 2005); *see also Buchanan*; *Allingham v. Workmen's Comp. Appeal Bd. (City of Pittsburgh)*, 659 A.2d 49 (Pa. Cmwlth. 1995); *Hebden v. Workmen's Comp. Appeal Bd. (Bethenergy Mines, Inc.)*, 597 A.2d 182, 192 (Pa. Cmwlth. 1991), *rev'd on other grounds*, 632 A.2d 1302 (Pa. 1993) ("A claimant who . . . is entitled to the [Presumption] that the disease 'arose out of and in the course of his employment,' must nevertheless show that he or she was *disabled* (lost earning power) as a result of the disease.").

However, in *City of Philadelphia v. Workers' Compensation Appeal Board (Cospelich)*, 893 A.2d 171 (Pa. Cmwlth. 2006), wherein the employer took the position the Board proffered here, this Court explained:

> In [*Buchanan* and *Allingham*], the claimant was seeking total or partial disability benefits as a result of an occupational disease and the issues before the [C]ourt involved, *inter alia*, whether the claimant had met his burden of proving that he was in fact disabled by the

6

occupational disease. Here, [the claimant] has not alleged that he is disabled, nor sought compensation benefits. Our research has not revealed any appellate decisional law holding that a claimant suffering from an occupational disease was not entitled to payment of reasonable and necessary medical expenses because the disease had not yet caused the claimant to sustain a loss of earnings. Moreover, such a holding would be inconsistent with both the Act and other settled decisions of this [C]ourt. Section 306(f.1)(1) of the Act, *as amended*, 77 P.S. § 531(1) provides, in pertinent part:

(i) The employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers[] . . . .

(ii) In addition to the above service, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances, and prostheses in accordance with this section. . . . [] *The provisions of this section shall apply to injuries whether or not loss of earning power occurs. . . .*

(Emphasis added.) Thus, the Act requires an employer to pay for work-related medical expenses whether or not a loss of earnings has occurred.

In *Odd Fellow's Home of Pennsylvania v. Workmen's Comp*[*ensation*] *Appeal* [*Board*] *(Cook)*, . . . 601 A.2d 465 ([Pa. Cmwlth.] 1991), this [C]ourt discussed the same principle established by the precursor to Section 306(f.1) [of the Act], opining:

[Employer] also argues that the [WCJ] erred in determining that [the claimant] was entitled to an award for reimbursement of medical expenses pursuant to [former S]ection 306(f) of the [A]ct, 77 P.S. § 531. Although we hold that [the claimant] has failed to prove a disability, the denial of disability benefits is not inconsistent with an award for medical expenses incurred for treatment of a work-related injury. An employee is not required to show that an injury resulted in loss of earnings to permit receipt of reimbursement for

7

medical expenses. As subsection 4 of [S]ection 306 of the [A]ct provides:

> The employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances. . . . The provisions of this [sub]section shall apply in injuries whether or not loss of earning power occurs.[FN12]

[*Odd Fellow's Home*, 601 A.2d] at 471 (citations omitted, footnote added). *Accord Canestrale v. Workmen's Comp. Appeal Bd. (Wheeling Pittsburgh Steel)*, . . . 634 A.2d 841 ([Pa. Cmwlth.] 1993). Indeed, it is now well[ ]established that an employer should issue a notice of compensation payable/denial in a "medical only" claim or risk the imposition of penalties for a violation of the Act. *See Orenich v. Workers' Comp. Appeal Bd. (Geisinger Wyo*[.] *Valley Med. Ctr.)*, 863 A.2d 165 (Pa. Cmwlth. 2004) . . . . According[ly], we conclude that the Board and WCJ did not err in concluding that [the claimant] was entitled to medical benefits relating to his hepatitis C despite not having incurred any loss of earnings.

In conjunction with the above argument, [the] employer contends that [the claimant's] lack of disability precludes application of the [P]resumption set forth in Section 301(e)[ of the Act]. The [Presumption] "is an evidentiary advantage for a claimant who has contracted an 'occupational disease' in an occupation or industry in which such disease is a hazard," *City of Phila*[.] *v. Workers' Comp. Appeal Bd. (Rilling)*, 827 A.2d 1258, 1262 (Pa. Cmwlth. 2003) . . . ; in such cases, the claimant is entitled to the rebuttable [P]resumption that the occupational disease arose out of and in the course of his employment. [*See*] *Allingham* . . . [citing *Hebden* . . . . ]. In addition to the [P]resumption established by Section 301(e) [of the Act], Section 108(m.1) [of the Act (relating to hepatitis C)] contains a [P]resumption specifically for firefighters who sustain hepatitis C while engaged in their occupation. Unlike the [P]resumption in Section 301(e) [of the Act], . . . Section 108(m.1) [of the Act] does not even use the term disability, so [it] cannot even arguably require loss of earnings for the [P]resumption to

8

apply.[FN15]  Thus, we conclude that the WCJ did not err in applying the [P]resumption in this case.

> [FN12] While [former] Section 306(f) [of the Act] has since been amended and renumbered to Section 306(f.1) [of the Act], this obligation has not changed.  *See* [77 P.S. § 531(1)(i), (ii)].

> [FN15] The requirement that a claimant must prove disability to be entitled to the Section 301(e) [of the Act] [P]resumption seems illogical since the [P]resumption only relieves the claimant from proving that his occupational disease arose in the course of his employment.

*Cospelich*, 893 A.2d at 178-79 (italics added; footnotes omitted).

A few months after deciding *Cospelich*, this Court again ruled, in *Young v. Workers' Compensation Appeal Board (Zinc Corp. of America)*, 897 A.2d 530, 534-35 (Pa. Cmwlth. 2006), *aff'd as modified*, 922 A.2d 891 (Pa. 2007):

> Despite language in the Act and case law generally stating that eligibility for compensation depends upon proof of disability, which is synonymous with earnings loss, our [C]ourt has clarified that a claimant suffering from an occupational disease is entitled to payment of reasonable and necessary medical expenses regardless of whether the disease has caused earnings loss.

*Young*, 897 A.2d at 534-35 (citations omitted); *see also Caffey v. Workers' Comp. Appeal Bd. (City of Phila.)*, 185 A.3d 437, 446 (Pa. Cmwlth. 2018) ("If [a c]laimant can establish that he sustained an occupational disease under any applicable provisions of the Act, he is entitled to payment of his medical bills related to his occupational disease even though he did not suffer a loss in earnings.").

Based on *Cospelich*, *Young*, and *Caffey*, this Court holds that the Board erred by ruling that Claimant had to prove disability (i.e., earnings loss) before the WCJ could apply the Presumption in this case.  Rather, for the Presumption to apply relative to his medical-only Claim Petition, Claimant only had to prove that he

suffered from an occupational disease listed in Section 108 of the Act. *See Steele v. Workers' Comp. Appeal Bd. (Findlay Twp.)*, 155 A.3d 1173 (Pa Cmwlth. 2017). If successful in doing so, Claimant would be relieved of the burden of proving that his "disease arose out of and in the course of his employment[.]" 77 P.S. § 413. Accordingly, this Court reverses the portion of the Board's order ruling that Claimant had to prove disability in this instance.

Having clarified the applicable burdens of proof, this Court will now review the record to determine whether Claimant met his burden of proving that he "has an occupational disease listed in Section 108 of the Act[.]" *Steele*, 155 A.3d at 1177.

At the WCJ hearings, Claimant testified[8] that, although Employer provided respiratory protection equipment when he fought fires for the first two years of his employment, Employer did not provide such equipment when he photographed fire scenes for the VCU. *See* R.R. at 50a. Claimant estimated that he photographed 8 to 10 multiple-alarm fires per year and, over time, he photographed 50 to 70 rooms where deaths occurred. *See* R.R. at 77a-79a. Claimant explained that, for multiple alarm fires, he would be at a scene for 8 to 10 hours and, relative to death investigations, he would be at a fire scene for at least 6 hours. *See* R.R. at 49a, 76a.

According to Claimant, he has never smoked cigarettes, and has not lived with a smoker (his mother) since his early teens. *See* R.R. at 66a-67a. He declared that he never had breathing problems, asthma, or bronchitis before he worked for Employer. *See* R.R. at 73a-75a. Claimant recalled that, in approximately 2015, he began experiencing breathing problems and had successive bouts of bronchitis and, after testing, was diagnosed with RADS and he notified Employer.

---

[8] The WCJ observed at the hearing that "Claimant spoke in a slow and labored voice." R.R. at 13a; *see also* R.R. at 59a.

*See* R.R. at 51a-54a, 69a-70a, 82a. Claimant stated that his respiratory condition has gotten progressively worse over time, and he loses his voice depending on the air temperature. *See* R.R. at 58a-59a, 61a, 81a-82a. Notwithstanding, Claimant continued to work for Employer until his elbow injury caused him to stop working in June 2018. *See* R.R. at 58a.

Claimant represented that he currently treats with pulmonologist Gary Aaronson, D.O. (Dr. Aaronson) approximately every six months, who has prescribed medications and an inhaler for him. *See* R.R. at 61a-63a, 84a. Claimant indicated he plans to return to work for Employer once his elbow injury resolves. *See* R.R. at 59a-60a. However, Claimant expressed concern that he will be unable to use the breathing devices Employer now supplies for the community outreach team (referred to as CAT) because now he "can't breathe through a sheet." R.R. at 60a.

Claimant also presented a packet of medical reports from his treating physicians - Neil M. Cohen, D.O. (Dr. Cohen), Aditi Satti, M.D. (Dr. Satti), Miriam Rosado, M.D. (Dr. Rosado), Justin Palatt, M.D. (Dr. Palatt), and Dr. Aaronson[9] - that the WCJ admitted into the record.[10] According to Dr. Palatt's records review summary, on November 24, 2012, Claimant treated for a subjective cough. *See* R.R. at 92a. On December 12, 2013, Claimant was seen for upper respiratory symptoms, diagnosed with sinusitis, and prescribed medication. *See id.* On July 23, 2014,

---

[9] Dr. Cohen was Claimant's primary care doctor from 2006 until 2017. *See* R.R. at 142a. Dr. Cohen initially treated Claimant for bronchitis and, ultimately, referred Claimant to pulmonologist Dr. Satti at the Temple Lung Center. *See* R.R. at 69a-73a. Dr. Rosado has been Claimant's primary care doctor since 2017. *See* R.R. at 72a-73a. Dr. Palatt is another physician in Dr. Rosado's practice who has treated Claimant. *See* R.R. at 92a.

[10] A significant portion of Claimant's medical history was supplied in Dr. Palatt's July 17, 2019 records review summary, the supporting records for which are not included in this record; thus, more detailed information is unavailable to this Court. *See* R.R. at 92a-93a. Claimant's counsel represented at the November 15, 2021 oral argument before this Court that, since this matter was a medical-only claim involving disability of 52 weeks or less, pursuant to Section 422(c) of the Act, added by Section 6 of the Act of June 26, 1919, P.L. 642, 77 P.S. § 835, unsworn medical reports and office notes were admissible in the absence of the opposing party's objection.

Claimant was again treated for sinusitis, plus an upper respiratory infection and pharyngitis. *See id.* On February 3, 2015, Claimant was treated for a cough and fever. *See id.*

On February 24, 2016, Dr. Cohen examined Claimant for a cough with sputum and chest tightness that Dr. Cohen diagnosed as acute bronchitis. *See* R.R. at 92a, 128a-129a. On March 21, 2016, Claimant again treated with Dr. Cohen for a cough, chest tightness, shortness of breath, and wheezing that Dr. Cohen determined was recurrent bronchitis with possible mild asthma, for which he was given an albuterol inhaler and referred to Dr. Satti. *See* R.R. at 92a, 126a-127a. On April 8, 2016, Dr. Satti examined Claimant, diagnosed that he had chronic asthma and prescribed a mometasone inhaler in addition to his albuterol inhaler. *See* R.R. at 92a. During his annual examination with Dr. Cohen on May 10, 2016, Claimant reported a continued cough and shortness of breath, along with fatigue and lack of energy. *See* R.R. at 123a-125a. On August 1, 2016, Claimant underwent a skin test, that was negative for tuberculosis. *See* R.R. at 92a, 116a-117a. On August 9, 2016, Dr. Satti increased Claimant's mometasone dose and referred him for allergy testing.[11] *See* R.R. at 92a, 113a-114a.

Claimant again visited Dr. Cohen on October 21, 2016, for cough, chest tightness, and shortness of breath made worse by recent fires, distress due to his fear of not having enough breath to fight fires, and stomach issues related to his medications. *See* R.R. at 110a-112a, 119a-122a. Dr. Cohen diagnosed Claimant with anxiety, "mild persistent asthma without complication," gastroesophageal reflux disease and gastritis, and referred Claimant for an echocardiogram and to a gastroenterologist. R.R. at 121a. Claimant followed up with Dr. Rosado on

---

[11] The allergy test results do not appear to have been included in the record before the WCJ.

November 29, 2016, who diagnosed Claimant with chronic asthma. *See* R.R. at 92a, 107a-109a, 130a.

On March 31, 2017, on Dr. Satti's referral that referenced Claimant's associated diagnoses of "[r]eactive airway disease" (RAD)[12] and "unspecified asthma severity, uncomplicated," R.R. at 131a, Claimant underwent a cardiopulmonary exercise test that he was unable to complete due to shortness of breath; notwithstanding, the test findings suggested that Claimant's limitations were cardiac rather than pulmonary in nature. *See* R.R. at 92a, 131a-137a, 141a-142a. On April 25, 2017, Dr. Satti ordered an echocardiogram and referred Claimant to a cardiologist for dyspnea (i.e., shortness of breath). *See* R.R. at 92a.

On March 29, 2018, Claimant had a preventative visit with Dr. Rosado who changed his mometasone to Symbicort and referred him for additional testing. *See id.* Claimant's April 4, 2018 chest x-ray was negative for pathology. *See* R.R. at 92a, 101a. Claimant followed up with Dr. Rosado on July 3, 2018, who reported that Claimant was doing well on Symbicort; however, he became symptomatic when he tried stopping it. *See* R.R. at 93a. During that visit, Claimant complained of, *inter alia*, anxiety, asthma, bronchitis, and shortness of breath. *See* R.R. at 104a-106a. Dr. Rosado diagnosed Claimant with "[a]sthma [chronic obstructive pulmonary disease]" and opined that, since Claimant was a firefighter, "I think [Claimant's] pulmonary issues have something to do with his occupation." R.R. at 106a.

Claimant treated with Dr. Aaronson on July 12, 2018, for asthma symptoms, and Dr. Aaronson diagnosed Claimant with moderate, persistent asthma and intermittent sinusitis and bronchitis. *See* R.R. at 93a, 99a-103a. Dr. Aaronson declared: "[G]iven [Claimant] is a firefighter and has exposure in the workplace to

---

[12] Although it is not clear based on this record, it appears that RAD and RADS are separate and distinct conditions.

13

caustic materials he would benefit from wearing a respirator at all times while investigating fire scenes and fighting fires[.]" R.R. at 103a. On July 13, 2018, Claimant underwent an echocardiogram, that showed only mild left ventricular hypertrophy. *See* R.R. at 93a. On July 19, 2018, Claimant treated at an urgent care facility for sinusitis. *See id*.

On January 8, 2019, Dr. Aaronson again saw Claimant, and noted that Claimant continued to have intermittent asthma (currently stable), sinusitis and bronchitis, and repeated: "[G]iven [Claimant] is a firefighter and has exposure in the workplace to caustic materials he would benefit from wearing a respirator at all times while investigating fire scenes and fighting fires." R.R. at 98a; *see also* R.R. at 93a, 94a-98a. Dr. Aaronson added:

> In my professional medical opinion[,] patients with asthma [RAD] should take precautions (respirator/[m]ask) in the workplace when exposed to smoke and fumes[,] as this can potentially cause worsening symptoms, cause exacerbations and deterioration in pulmonary function tests.
>
> Would suggest pulmonary function testing yearly to monitor [Claimant's] pulmonary status. [Claimant] was started on inhaler therapy . . . and is monitoring his peak flows. [Claimant] has follow-up appointment [in] July 2019[,] at which time further suggestions and assessment can be made concerning his asthma.

R.R. at 94a.

On July 8, 2019, Claimant had a preventative visit with Dr. Palatt, during which Claimant was not experiencing pulmonary symptoms. *See* R.R. at 93a. On July 16, 2019, Dr. Palatt summarized, based on his review of Claimant's medical records:

> [O]ccupational exposures are a major risk for pulmonary disease. [Claimant] reports not having a mask for much of his career and this is certainly an occupational exposure

14

which could lead to asthma. His cardiopulmonary testing suggested a cardiac limitation, his decreased peak flow suggests pulmonary disease. These results are discordant and repeat pulmonary function testing may help further clarify this, as well as completing a cardiac evaluation if not yet done. From the standpoint of symptoms, it is clear that he is [sic] improved after having to remove himself from the work environment for unrelated reasons.

*Id.*

In addition to Claimant's medical records, the WCJ admitted the Independent Medical Evaluation (IME) report of Employer's expert John R. Cohn, M.D. (Dr. Cohn) into the record. According to the IME report, Dr. Cohn evaluated Claimant on March 4, 2019, at Employer's request. At that time, the only medical record Dr. Cohn reviewed was Dr. Satti's April 25, 2017 letter, reflecting that Claimant had a persistent cough, and cardiopulmonary exercise testing revealed Claimant's exercise limitations were cardiac- not pulmonary-related. *See* R.R. at 142a, 144a, 146a. Dr. Cohn also observed that Dr. Satti's April 25, 2017 letter, referenced RAD, not RADS. *See* R.R. at 143a.

Dr. Cohn took Claimant's medical history, during which Claimant informed Dr. Cohn that he "is always clearing his throat and having a cough[, and] [h]e complains of some shortness of breath and wheeze [sic]." R.R. at 145a. Claimant reported that he uses a Symbicort inhaler (Symbicort 80 - one puff twice per day; or Symbicort 160 - one puff at night), and a rescue inhaler that he uses up to three times per week. *See* R.R. at 143a. Claimant described to Dr. Cohn that he had four episodes of bronchitis (and four rounds of antibiotics) since July 2018. *See* R.R. at 143a-144a. Claimant also shared that he experiences episodes of waking at night gasping for breath, which increased in frequency over the preceding three months. *See* R.R. at 144a.

During the physical examination, Dr. Cohn discovered that Claimant's chest was clear, and he notably did not cough during the IME. *See* R.R. at 145a. Dr.

Cohn also observed that Claimant had a deviated septum and "some anxiety." R.R. at 145a. Dr. Cohn's IME report reflects that Claimant underwent spirometry testing; the first test was "entirely normal," R.R. at 145a, and, after complaining of chest tightness, Claimant used his inhaler and repeated the spirometry, which "was essentially unchanged." R.R. at 146a.

> Dr. Cohn concluded:
>
> At this point, [Claimant] complains of episodes of cough and shortness of breath with impaired exercise tolerance. His pulmonary function tests are entirely normal, and there is no response to bronchodilator. He has some impairment of his exercise tolerance, but based on what I could find in Dr. Satti's April 25, 2017 letter, his limitation is cardiac, not pulmonary. I cannot identify any objective evidence of a lung problem. He does have complaints of a cough with some sputum, but he also has a deviated nasal septum, and it's possible that he has a post[-]nasal drip. His pulmonary function tests do not demonstrate evidence of asthma, and his methacholine challenge is characterized in [Dr. Satti's] letter as negative. Unfortunately, his detailed results were not available.
>
> . . . . I cannot demonstrate evidence of asthma to support a diagnosis of [RADS], and [Claimant's] exercise study suggested that his shortness of breath with exertion was related to cardiac disease or deconditioning, rather than to a pulmonary injury.

R.R. at 146a. In an April 1, 2019 letter, Dr. Cohn reported receiving and reviewing Claimant's testimony and additional medical records, but declared that those documents did not alter his March 4, 2019 IME opinion. *See* R.R. at 150a.

"The law is well[]settled that '[t]he WCJ has exclusive authority to act as fact[-]finder, determine credibility of witnesses, and weigh the evidence.'" *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1204 (Pa. Cmwlth. 2018) (quoting *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014)). "The WCJ, therefore, is free to

16

accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

In this case, the WCJ made the following relevant factual findings:

2. By letter of August 22, 2016, Claimant placed the Employer on notice that he was advised by a pulmonologist that he suffered from RADS which is a form of occupational asthma. Claimant further stated that he believed the illness was from the direct exposure to soot and debris on the job. Claimant requested that this be recognized as a [WC] injury.

. . . .

9. This [WCJ] finds Claimant to be credible based largely on his demeanor and comportment at the hearing. No contrary factual testimony was presented. His testimony is consistent with the medical records. Of prime importance is his testimony that he was exposed for hours at a time to smoke and soot while investigating fire scenes and that he wore no respiratory protection during this exposure.

10. This [WCJ] finds as fact that [] Claimant suffers from asthma that is causally related to his occupation as a fireman. Claimant's occupation is a substantial causal factor in his pulmonary condition. In totality, the reports of Drs. Rosado, Aaronson and Palatt support this finding. This [WCJ] rejects the contrary opinion of Dr. Cohn. In rendering this finding, this [WCJ] notes the following to be significant:

a. Dr. Cohn concludes that [] Claimant does not have a respiratory condition. He is the only physician to hold this conclusion and it is contrary to numerous treating physicians -- Drs. Rosado, Palatt, Aaronson[,] Satti[,] and Cohen. These physicians are from several different offices, yet all concur in the diagnosis of asthma. The diagnosis is corroborated by Claimant's decrease in peak flow on respiratory testing and also his

17

deterioration when removed from the asthma medication.

b. Dr. Palatt noted that occupational exposures are a major risk for pulmonary disease and the failure of Claimant to wear a mask could lead to the asthma. He also noted that Claimant has improved after removal from the work environment which further supports the causal relationship.

c. Dr. Aaronson stated that smoke and fumes can worsen symptoms, cause exacerbations and deterioration in pulmonary function. He cautioned that Claimant would benefit from a respirator when investigating fire scenes to protest [sic] himself from caustic material. This precaution supports the causal relationship between the asthma and the work place.

d. Dr. Rosado clearly stated that she believed that the pulmonary issues had a casual [sic] relationship with the asthma.

e. Dr. Cohn evaluated Claimant only one time for purpose of this litigation. The other physicians were treating physicians with more exposure to Claimant.

WCJ Dec. at 3-6 (R.R. at 13a-16a). Although the WCJ did not reference the Presumption in his decision, and it is unclear whether he applied it to this case, he nevertheless concluded: "Claimant sustained the burden on this Claim Petition and established that he suffers *asthma* that is causally related to the work environment. Claimant is entitled to the payment of all reasonable and necessary medical expenses related to the work injury." WCJ Dec. at 6 (R.R. at 16a) (emphasis added).

On appeal, neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations,[13] *see Sell v. Workers' Comp. Appeal Bd.*

___

[13] Specifically, "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. [Thus, u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Pa. Uninsured Emps. Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297, 303 (Pa.

*(LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001), and "'[t]he WCJ's findings will not be disturbed if they are supported by substantial, competent evidence.'" *Rogele, Inc.*, 198 A.3d at 1204 (quoting *Stepp*, 99 A.3d at 601 n.6). "'Substantial evidence . . . [i]s such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Aqua Am., Inc. v. Workers' Comp. Appeal Bd. (Jeffers)*, 199 A.3d 482, 486 (Pa. Cmwlth. 2018) (quoting *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 943 (Pa. 2004)).

> "In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party [that] prevailed before the fact[-]finder [(i.e., Claimant)]." "Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the fact[-]finder's decision in favor of that prevailing party." It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings.

*3D Trucking Co., Inc. v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (citations omitted) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003)).

> Here, the Board held:

> [T]he WCJ erred in determining that Claimant met his burden establishing that his asthma was caused by his employment with [Employer] as a firefighter because Claimant failed to present a medical opinion

---

Cmwlth. 2014) (quoting *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006) (citation omitted)). Capricious disregard "occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). Capricious disregard, by definition, does not exist where, as here, the WCJ expressly considered and rejected evidence. *See id.*

19

unequivocally linking his asthma to his occupation as a firefighter. . . .

> *. . . . Claimant's physicians seem to be in agreement that Claimant has contracted a pulmonary condition.* Nevertheless, none of the medical records clearly and unambiguously attribute Claimant's pulmonary conditions to his exposure to gas, heat, smoke, and fumes endured in his occupation as a firefighter. Although Dr. Rosado indicated her belief that Claimant's "pulmonary issues have something to do with his occupation" [(R.R. at 106a)], Dr. Aaronson opined that[,] as a firefighter, Claimant was exposed to caustic materials [(*see* R.R. at 98a)], and Dr. Palatt expressed that "occupational exposures are a major risk for pulmonary disease" [(R.R. at 93a)], none of these medical professionals indicated that it was their professional belief that Claimant's exposure to smoke, heat, fumes, and gases in his work as a firefighter caused his pulmonary issues. Rather, these credible medical opinions leave doubt as to the direct cause of *Claimant's pulmonary condition*, and as such are insufficient to meet Claimant's burden of producing unequivocal medical evidence to support that his condition was work[]related.

Board Op. at 9-11 (R.R. at 32a-34a) (footnote omitted; emphasis added).

Pursuant to Section 419 of the Act,[14] 77 P.S. § 852, the Board is authorized to remand any case to the WCJ "where the WCJ fails to make findings on a crucial issue for a proper application of the law[,]" *Commonwealth/Dep't of Pub. Welfare v. Workers' Comp. Appeal Bd. (Harvey)*, 960 A.2d 957, 964 (Pa. Cmwlth. 2008), *aff'd*, 993 A.2d 270 (Pa. 2010), "where the findings of fact fail to resolve a necessary issue raised by the parties[,]" *Steinhouse v. Workers' Comp. Appeal Bd. (A.P. Green Servs.)*, 783 A.2d 352, 356 (Pa. Cmwlth. 2001), and/or "where . . . [the] WCJ makes findings that are inconsistent with his legal conclusions[.]" *Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 438 (Pa. Cmwlth. 2002).

---

[14] Added by Section 6 of the Act of June 26, 1919, P.L. 642.

20

Here, the WCJ concluded that Claimant "sustained [his] burden . . . and established that he suffers asthma that is causally related to the work environment." WCJ Dec. at 6 (R.R. at 16a). Indeed, the credited medical evidence supported the WCJ's finding and conclusion that "Claimant suffers from *asthma*."[15] WCJ FOF 10, WCJ Dec. at 5 (R.R. at 15a) (emphasis added); *see also* Conclusion of Law 2, WCJ Dec. at 6 (R.R. at 16a). However, the WCJ reached this conclusion despite that Claimant put Employer on notice that he suffered from work-related *RADS*, *see* R.R. at 91a, and he specified in his Claim Petition that the work injury for which he sought compensation was *RADS*. *See* R.R. at 1a; *see also* WCJ FOF 4, WCJ Dec. at 3 (R.R. at 13a). The WCJ did not reference, let alone make a factual finding, that Claimant proved the *only* injury he specified in the Claim Petition - RADS. Nor did Employer challenge the WCJ's finding of asthma or conclusion of law related thereto. The record is not clear, and the WCJ did not expressly conclude, that RADS and asthma are one and the same.[16] Considering that Claimant had the burden of proving all of the elements necessary to support his claim for compensation, *see Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund)*, 159 A.3d 61 (Pa. Cmwlth. 2017), and it is does not appear that the WCJ amended Claimant's Claim Petition injury description,[17] the WCJ failed to address a key issue.

---

[15] Viewing the evidence in a light most favorable to Claimant, and drawing all reasonable inferences in Claimant's favor, as this Court must, we hold that the WCJ's findings that Claimant proved he has asthma are supported by record evidence and, thus, the Board erred to the extent that it made any findings of fact contrary to those made by the WCJ on that subject.

[16] In fact, only Claimant's August 22, 2016 letter to Employer declared that RADS "is a form of occupational asthma." *See* R.R. at 91a.

[17] "[L]iberal pleading rules apply in [WC] matters." *Sloane v. Workers' Comp. Appeal Bd. (Children's Hosp. of Phila.)*, 124 A.3d 778, 787 (Pa. Cmwlth. 2015). Section 131.35(a) of the Board's Regulations declares: "A party has the right to amend a pleading at any time in a proceeding before a [WCJ] unless the [WCJ] determines that another party has established prejudice as a result of the amendment." 34 Pa. Code § 131.35(a). Although a claimant may not be permitted to amend a claim petition to assert an entirely new injury after the limitations period

21

Rather than remanding on that error, the Board further exacerbated the matter. Notably, the Board agreed Claimant's evidence supported that he suffers from a *pulmonary condition*, but disputed that it was caused by Claimant's employment, declaring that Claimant's causation evidence was equivocal.[18] Moreover, the Board addressed the Presumption when it does not appear that it was raised before or considered by the WCJ.[19]

Importantly, regardless of whether Claimant pled and/or proved he has RADS, asthma, or a pulmonary condition, he "is entitled to the [rebuttable P]resumption that the disease arose during the course of his employment[,]" *City of Phila.*, 29 A.3d at 769, *only* if he has an occupational disease listed in Section 108 of the Act. Section 108 of the Act specifies: "The term 'occupational disease' . . . shall mean *only* the following diseases. . . . (o) [d]*iseases of the . . . lungs . . .* " suffered by firefighters. 77 P.S. § 27.1 (emphasis added). RADS, asthma, and

---

has passed, this Court has held that, when the amendment does not change the theory of recovery, such that the employer has been on notice and has been defending the identical claim since the original filing, the amendment will not be time-barred. *See Sota Constr. Servs., Inc. v. Workers' Comp. Appeal Bd. (Czarnecki, Zawilla d/b/a Gorilla Constr.)*, 224 A.3d 63 (Pa. Cmwlth. 2019); *see also Findlay Refractories v. Workmen's Comp. Appeal Bd.*, 415 A.2d 1270 (Pa. Cmwlth. 1980).

[18] "Generally, . . . unequivocal medical evidence [is necessary to] establish[] a causal connection between the alleged injury and the work incident" when the connection is not obvious. *Roundtree*, 116 A.3d at 144. This Court has explained that, although Section 422(c) of the Act authorized the WCJ to admit unsworn hearsay medical reports in lieu of medical testimony, "[w]hether the content of the forms sufficiently address the matters at issue, and whether the forms are persuasive are questions relating to the credibility and to weight of this evidence rather than to its admissibility." *Joy Glob., Inc. v. Workers' Comp. Appeal Bd. (Hogue)*, 876 A.2d 1098, 1105 (Pa. Cmwlth. 2005). Therefore, Section 422(c) of the Act does not relieve a claimant of his burden to offer substantial unequivocal medical evidence to support the allegations in his claim petition. Medical reports that merely summarize a claimant's treatment and do not provide a foundation and/or conclusion regarding causation may not satisfy that burden.

[19] Unequivocal medical evidence is also necessary if the Presumption does not apply. *See Craftex Mills, Inc. of PA v. Workers' Comp. Appeal Bd. (Markowicz)*, 901 A.2d 1077 (Pa. Cmwlth. 2006) (when a claimant does not have the benefit of the Presumption, he has the normal burden of presenting unequivocal medical evidence of the illness and causation by workplace exposure).

pulmonary condition are *not specifically listed* as occupational diseases in Section 108 of the Act, and it is not clear whether the General Assembly intended that "[d]iseases of the . . . lungs" referred to in Section 108(o) of the Act include RADS, asthma, or a pulmonary condition. *Id*. Neither the WCJ nor the Board addressed that key legal issue.

> Regardless, this Court may not ignore a glaring error of law relating to the application of an incorrect legal standard upon the very issue before [it]. In examining questions of law, our review is plenary. *Tomaskevitch v. Specialty Rec[s.] Corp.*, 717 A.2d 30 (Pa. Cmwlth. 1998). Even when neither party raises the issue, we may review a case upon the correct legal principles that apply in fulfillment of our review function. *See Mayo v. Lichtenwalner*, . . . 557 A.2d 798 ([Pa. Cmwlth.] 1989). We must exercise our appellate review consistent with established precedent. *Burger v. Zoning Hearing B[d.] of the Mun[.] of Penn Hills*, . . . 485 A.2d 879 ([Pa. Cmwlth.] 1984).

*Donovan v. Workers' Comp. Appeal Bd. (Acad. Med. Realty)*, 739 A.2d 1156, 1161 (Pa. Cmwlth. 1999); *see also Malecki v. Workers' Comp. Appeal Bd. (Franklin Reg'l Sch. Dist.)* (Pa. Cmwlth. No. 582 C.D. 2020, filed Mar. 26, 2021).[20]

Here, key to the Board's and this Court's review is whether Claimant proved his entitlement to WC benefits. Specifically, whether he proved the injury he alleged in the Claim Petition, and whether it was causally related to his employment (or he was entitled to the Presumption). Because those issues cannot be resolved by this Court, this matter must be remanded to the Board and the WCJ for application of the correct legal principles.

---

[20] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent. *Malecki* is cited for its persuasive value.

## Conclusion

Based on the foregoing, this Court reverses the Board's order and remands the matter to the Board to remand to the WCJ for further proceedings consistent with this Opinion.

_____
ANNE E. COVEY, Judge

Senior Judge Leadbetter concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter DiLaqua,                         :
            Petitioner          :
                                  :
             v.                 :
                                  :
City of Philadelphia Fire Department    :
(Workers' Compensation Appeal          :
Board),                                :   No. 1262 C.D. 2020
            Respondent          :

## O R D E R

AND NOW, this 23rd day of December, 2021, the Workers' Compensation Appeal Board's (Board) December 16, 2020 order is reversed, and the matter is remanded to the Board to remand to the Workers' Compensation Judge for further proceedings consistent with this Opinion.

Jurisdiction is relinquished.


_____
ANNE E. COVEY, Judge